## GEM IRRIGATION DISTRICT, a Municipal Corporation, Plaintiff, v. E. G. GALLET, State Auditor, Defendant.

[253 Pac. 128.]

MANDAMUS TO STATE AUDITOR — DUTY OF AUDITOR — BOARD OF EX-
AMINERS—JURISDICTION—IRRIGATION DISTRICT'S AGREEMENT WITH
STATE NOT ULTRA VIRES—DOES NOT ABOLISH LIEN—STATUTES—
CONSTITUTIONAL REQUIREMENTS FOR PASSAGE—LEGISLATIVE APPRO-
PRIATION NOT SPECIAL LEGISLATION—DOES NOT CONSTITUTE GIVING
STATE AID TO DISTRICT.

1. Application for writ of mandate to state auditor to issue warrant to irrigation district for claim allowed by state board of examiners for reclaiming state land within the district *held* to state cause of action.

2. Under Const., art. 4, sec. 18, state board of examiners is vested with sole and exclusive power to determine allowance of claim against state for reclaiming state land.

3. Though claims against state which Const., art. 4, sec. 18, empowers state board of examiners to pass and allow must be in their nature legal, claim for reclamation of state lands within irrigation district, which legislature by Laws 1923, chap. 141, determined should be reclaimed and reclamation paid for, is such a claim.

4. It was not *ultra vires* for irrigation district to agree to ac-cept certain sum from state for past outlays in reclamation of state land within the district and also for future outlays incident to maintenance of the project as a whole.

5. Agreement of irrigation district with state to satisfy all demands "against the state" on account of reclamation of state lands within the district is not one to abolish the lien given the district by C. S., sec. 4449, on state lands immediately on their purchase by third parties.

6. The state board of examiners having allowed claim against state, it was auditor's duty to honor its action and issue warrant, unless he found the act authorizing such allowance invalid.

7. Under state of house journal, *held* that yea and nay vote disclosed thereby, following which bill was declared passed, would be presumed to be that required by Const., art. 3, sec. 15, to be taken on final passage of bill and to be entered on the journal, and that error of journal was in failure to record action on dis-

closed motion for previous question, which was not fatal to validity of the act.

8. Laws 1923, chap. 141, making appropriation and authorizing its expenditure for reclamation of state lands in a certain irrigation district, was not special legislation, legalizing against state invalid acts of board of directors of district, or impairing district's lien.

9. Laws 1923, chap. 141, making appropriation for reclamation of state lands within a certain irrigation district, and providing for payment by state board of land commissioners to the district on sums as shall be approved by state board of land commissioners and allowed by state board of examiners, *held* not a giving or lending of state aid to the district, but a provision for protection of state lands, authorized by Const., art. 9, sec. 8.

Original application for a writ of mandate to be directed to the state auditor commanding him to issue a warrant to the Treasurer of the Gem Irrigation District for $98,000. *Directed that writ issue as prayed for.*

John C. Rice and Edwin Snow, for Plaintiff.

The propriety of the claim and the determination of whether the conditions had been met to make it a valid claim are matters for the sole determination of the board of examiners. (Const., art. 4, sec. 19; *Pyke v. Steunenberg*, 5 Ida. 614, 51 Pac. 614; *Bragaw v. Gooding*, 14 Ida. 288, 94 Pac. 438; *Thomas & Faris v. State*, 16 Ida. 81, 100 Pac. 761; *State v. Howard*, 83 Vt. 6, 74 Atl. 392.)

Even if the action of the state land board and state board of examiners in determining the propriety of the claim were subject to review, the conditions under which money might be paid out have been fully met. (a) Because the only "obligations and demands" from which the state is to be "relieved" is an implied business obligation arising out of the

Publisher's Note.

See Mandamus, 38 C. J., sec. 587, p. 869, n. 31.

States, 36 Cyc., p. 894, n. 33; p. 902, n. 33; p. 903, n. 49; p. 904, n. 59.

Statutes, 36 Cyc., p. 1009, n. 47; p. 1243, n. 5; p. 1244, n. 12.

Waters, 40 Cyc., p. 821, n. 23 New.

state's proprietary capacity as land owner—not a legal obligation for assessments, because state lands cannot be assessed. (C. S., sec. 4402.)

(b) The nature of the "obligations and demands" which the legislature meant is shown in the previous course of dealing by the state with this and other irrigation districts and drainage districts. (Laws 1909, p. 132; Laws 1911, p. 47; Laws 1913, p. 296; Laws 1915, p. 358.)

(c) The contract is an effectual record satisfaction of a business obligation, the execution of which is within the implied powers of the district. (C. S., secs. 4346, 4351; *Hanson v. Kittitas Reclamation Dist.*, 75 Wash. 297, 134 Pac. 1083; *Bridgeport v. Housatonuc R. Co.*, 15 Conn. 475; *State v. Tampa Water Works Co.*, 56 Fla. 858, 47 So. 358, 19 L. R. A., N. S., 183.)

A. H. Conner, Attorney General, and John W. Cramer, Assistant Attorney General, for Defendant.

The vote on the final passage of a bill must be by yeas and nays, which must be entered upon the journal. (Const., art. 3, sec. 15; *In re Drainage Dist. No. 1*, 26 Ida. 311, 143 Pac. 299, L. R. A. 1915A, 1210.)

The contract is *ultra vires* and void. (a) Irrigation districts in Idaho are *quasi*-municipal corporations, and the law relating to them is to be construed the same as in the case of other municipal corporations. (*Colburn v. Wilson*, 23 Ida. 337, 130 Pac. 381; *Gem. Irr. Dist. v. Van Deusen*, 31 Ida. 779, 176 Pac. 887; *Storey & Fawcett v. Nampa etc. Irr. Dist.*, 32 Ida. 713, 187 Pac. 946; *Yaden v. Gem Irr. Dist.*, 37 Ida. 300, 216 Pac. 250; *American Falls Reservoir Dist. v. Thrall*, 39 Ida. 105, 228 Pac. 236; *Merchants' Nat. Bank v. Escondido Irr. Dist.*, 144 Cal. 329, 77 Pac. 937.)

(b) Grants made to municipal corporations are strictly construed and any ambiguity or doubt must be resolved in favor of the granting power. (*State v. Frederic*, 28 Ida. 709, 155 Pac. 977; *Stimson v. Allessandro Irr. Dist.*, 135 Cal. 389, 67 Pac. 496, 1034; *Bradbury v. City of Idaho Falls*, 32 Ida. 28, 177 Pac. 388.)

(c) The agreement seeks to contract away the statutory powers of the district as to the particular lands involved. If the district can make such an agreement as to state lands, it can make it as to others, and could thus circumscribe or completely abrogate the right and duty of the district to exercise its statutory powers in the future. (*Yaden v. Gem Irr. Dist.,* 37 Ida. 300, 216 Pac. 250; *Colburn v. Wilson,* 23 Ida. 337, 130 Pac. 381; *Gale v. Village of Kalamazoo,* 23 Mich. 344, 9 Am. Rep. 80.)

It authorizes the impairing of the lien which the district has upon the state lands under C. S., sec. 4449, Const., art. 3, sec. 19.

If the act was intended to aid the district regardless of expenditures that may have been made for the benefit of the state, the appropriation would be for the purpose of aiding a municipal corporation, and, therefore, unconstitutional. (Const., art. 7, sec. 6; *Gem Irr. Dist. v. Van Deusen, supra.*)

Bothwell & Chapman, *Amici Curiae.*

T. BAILEY LEE, J.—The Gem Irrigation District comprises some 28,000 acres, 10,000 of which consist of lands belonging to the state of Idaho. In March, 1923, there was passed by the legislature and approved by the Governor the following act, now known as chap. 141 of the 1923 Session Laws:

"An Act

"Appropriating the Sum of Ninety-eight Thousand Dollars out of the General Fund of the State of Idaho for the Reclamation of State Lands Within the Gem Irrigation District in Owyhee County, and Authorizing the State Board of Land Commissioners to Expend the Same for the Reclamation of Said State Land, and Declaring an Emergency.

"*Be It Enacted by the Legislature of the State of Idaho:*

"Section 1. There is hereby appropriated out of the general fund of the State of Idaho not otherwise appropriated

the sum of ninety-eight thousand dollars, or so much thereof
as may be necessary, which sum of money shall be expended
by the state board of land commissioners for the purpose
of aiding in the reclamation of state lands lying within the
Gem Irrigation District in Owyhee county.

"Provided, That the state board of land commissioners
shall pay out said sum of money only upon the condition
that by the payment thereof the state shall be fully relieved
of all obligations and demands by reason of past or future
assessments heretofore levied, or hereafter to be levied upon
the lands within said district belonging to the state of Idaho,
or in which the state is interested by outstanding sale con-
tracts.

"Sec. 2.   The moneys hereby appropriated shall be kept in
a separate fund to be known as the Gem Irrigation District
State Land Commission Fund, and the state auditor is
hereby authorized to draw his warrant on said fund payable
to the treasurer of the said Gem Irrigation District for such
sum as shall be approved by the state board of land com-
missioners and allowed by the state board of examiners.

"Sec. 3.   An emergency existing therefor, it is hereby de-
clared this act shall take effect and be in force from and
after its passage and approval.

"Approved March 13, 1923."

In January, 1925, the Gem Irrigation District filed with
the state board of land commissioners for approval its claim
for $98,000 representing the state's proportion of expense
incurred in reclaiming the state land embraced by the dis-
trict.   Having been approved by the land board, the claim
was submitted to the state board of examiners, which ap-
proved and allowed the same, and directed the state auditor
to draw his warrant therefor in favor of the district's treas-
urer, to be paid out of the fund theretofore appropriated by
said act.   After demand, the auditor refused to execute
such warrant, and upon application of the district to this
court, an alternative writ of mandate directed to the auditor
was issued.   He made return contending that the applica-
tion did not state facts constituting a cause of action, and

that the act in question was "void, invalid and unconstitutional, and of no force and effect," his specifications, as presented by the attorney general, being that the act was not passed in conformity with the provisions of art. 3, sec. 5, of the state constitution, in that "said bill never received a majority vote of the members of the House of Representatives of the Seventeenth Legislature of the state of Idaho present at any of the times the said bill was considered; nor was a vote taken on the final passage of the said bill, either by yeas or nays, or otherwise; nor was the vote on the final passage of said bill, if any such vote was taken, entered upon the journal of said House of Representatives."

It will be noticed that the auditor's contention constitutes a collateral attack upon the determination of the state board of examiners adjudicating the correctness and propriety of the claim submitted. There is no question raised as to the regularity of the submission and approval. It would appear, therefore, that all statutory and constitutional requirements to that end had been complied with. [1] The application states that the district has expended in reclamation on state land $373,987.57, no part of which has been repaid; that it has agreed with the state through the land board to accept $98,000 "in full payment and satisfaction of all obligations and demands, moral and legal, against the state, by reason of past or future assessments heretofore levied or to be levied on the lands within said district belonging to the state of Idaho"; that its claim for such has been approved by the land board and the state board of examiners, and that the auditor has refused to issue a warrant pursuant to the latter board's order.

Do or do not these allegations constitute a cause of action? We think they do. Admittedly, all the facts were before the board of examiners. [2] Upon these facts the board was constitutionally vested with the sole and exclusive power to determine, rightly or wrongly, the allowance or disallowance of the claim. The board's discretion was absolute.

"The constitution creates the state board of examiners as a tribunal, with full power and jurisdiction to pass upon all

claims against the state, except those specifically excepted by
the constitution, and no court or other tribunal is author-
ized to set aside or reverse such action." (*Bragaw v. Good-
ing,* 14 Ida. 288, 94 Pac. 438.)

The claims exempted from the board's examination are
"salaries and compensation of officers fixed by law."
(Const., art. 4, sec. 19.)

[3] It may be insisted that the claims contemplated by
the constitution must be claims in their nature strictly
legal; and, the state being immune to taxation and assess-
ment, this particular claim was in nowise a legal one.
Granting that, in the absence of statute, the state's land
cannot be taxed or assessed or legally subjected to any other
charge, it must be remembered that the people through their
duly constituted agent, the legislature, determined that these
particular lands should be reclaimed and the reclamation
paid for, thereby recognizing a potential claim in favor of
the reclaiming district, and attaching to it a contingent le-
gality to become fixed when the respective boards should
have registered their approval.

[4] It is urged that the claim is unsupported by a con-
sideration, the district's agreement being *ultra vires* in that
its board of directors could enter into no contract with re-
spect to future claims or charges. Taking this agreement in
its broadest significance, it merely covenants to give the state
a clean bill of health for all services rendered or to be neces-
sarily rendered in accomplishing a definite object. Ob-
viously, the main consideration was for outlay already
suffered and the remaining consideration related to future
outlays incidental to the maintenance of the project as a
whole. The agreement was no more *ultra vires* than would
have been an agreement to build and maintain a bridge for
the convenience of some extra-district farmer through whose
field the district might have desired to run its feeder canal.

[5] Further contention is that the agreement impairs the
lien given the district under C. S., sec. 4449, upon state
lands immediately upon their purchase by third parties.
Sufficient answer to this is the language of the agreement

itself which undertakes specifically the satisfaction of all demands "against the state." Were the language to be construed to work an abolition of the lien hovering over such lands prior to individual purchase, that part thereof would undoubtedly be *ultra vires* and void. There would, however be no failure of consideration toward the state, since it cannot be relieved of a lien to which it was never subject.

[6] The state board of examiners having allowed the claim, it was the auditor's duty to honor its action, unless he found the act authorizing such allowance invalid. (*Rice v. Gwinn,* 5 Ida. 394, 49 Pac. 412; *Wycoff v. Strong,* 26 Ida. 502, 144 Pac. 341; *In re Huston,* 27 Ida. 231, 147 Pac. 1064; see, also, *State v. Howard,* 83 Vt. 6, 74 Atl. 392; *State ex rel. New Orleans Canal & Banking Co. v. Heard,* 47 La. Ann. 1679, 18 So. 746, 47 L. R. A. 512; *Wiles v. Williams,* 232 Mo. 56, 153 S. W. 1, 34 L. R. A., N. S., 1060.)

[7] As heretofore stated, the only ground of unconstitutionality specified in the return was the alleged failure to pass the act in conformity with the constitutional requirements. When the bill making the appropriation was before the house, the speaker announced the question: "Shall the bill pass?" A motion was offered that the bill be placed on general orders for further consideration, and the previous question was moved as a substitute. Following the last motion, according to the journal, there was a roll-call, showing the yeas and nays, followed by a declaration by the speaker that the bill had passed. The constitution, art. 3, sec. 4, requires that a yea and nay vote on the final passage of a bill shall be taken and "entered upon the journal," but the constitution neither requires the taking nor the entry on the journal of a yea and nay vote on the motion for the previous question, although, of course, the disposition of a motion for the previous question should be noted on the journal. The failure of the journal to disclose the action of the house on the motion for the previous question is not fatal to the validity of the act, and the error in the journal is in its failure to record the action of the house on the motion for

the previous question. From the fact that the speaker, immediately on the completion of the yea and nay vote, announced the passage of the bill, and, because the constitution requires that a yea and nay vote shall be taken and entered on the journal on the final passage of a bill but does not require such a vote on a motion for the previous question, it will be presumed that the indispensable requirement of the constitution was complied with, and that the yea and nay vote disclosed by the journal was on the passage of the bill. (*In re Drainage Dist. No. 1,* 26 Ida. 311, 143 Pac. 299, L. R. A. 1915A, 1210.)

[3] Notwithstanding the well-known rule so often by the court announced that it will not go outside the declared issues to find an act unconstitutional, there have crept into the argument specifications of unconstitutionality not found in the return, namely: that the act is special legislation, and that it authorizes the state to give or lend its credit to a corporation. It is suggested that, if the act is construed to grant the district the power to waive or compromise assessments, it is a local or special law in two respects, in that it purports to legalize against the state the invalid acts of the board of directors of the district, and to impair the lien which the district has upon such state lands. Even a hasty reading of the act will disclose that it does not purport to, nor in fact does, legalize as against the state, any act of the board of directors of the district, nor does it purport to or in fact impair any lien against such state lands. When this law was enacted, the district had not made or done anything valid or invalid which the law purports to legalize. Everything done by the district, its resolution to contract with the state, acting by and through the land board, and the contract which the board, acting for the state, approved, were each and all done and performed subsequent to the passage of the act. The law did not legalize, as against the state, any invalid act of the directors of the district. There is a clear distinction between the power of the legislature to authorize a thing to be done and in at-

tempting by a local or special act to validate something which was illegal when it was done. The act does not purport to authorize the impairment of any lien. An irrigation district has no lien on lands the title to which is in the state. The existence of such a lien is expressly prohibited. (C. S., sec. 4402.) What may be done by an irrigation district with respect to the imposition of liens on so-called state lands after they pass into private ownership is not in this case, and any pronouncement with respect thereto would be improper.

[9] Nor does the act authorize a giving or lending of state credit to the district. In its last analysis, the appropriation sanctions the direct improvement and protection of the state's own property. It is a cash transaction in which the legislature has determined that the state shall receive its *quid pro quo*. The state gives nothing; it lends nothing; it recognizes and discharges a moral obligation for past benefits accrued and of necessity further to accrue. The sole object of the act was the creation and maintenance of a public use. Whether or not the legislature acted wisely is beside the issue. It had the constitutional right to do as it did. Art. 9, sec. 8 of the state constitution makes it the duty of the land board to "protect . . . . " state lands; and the same section enjoins the legislature "at the earliest practicable period" to provide by law that such lands shall be " . . . . carefully preserved. . . . . "

"There is nothing upon the face of the statute to indicate that the private corporation referred to, or any individual, will or can, if the appropriation is honestly expended, receive one dollar as a gratuity, or by way of assistance, or except in return for something of value which the officers charged with its disbursement shall deem necessary to secure, in order to effect the general purpose and object of the act. . . . . The only protection against reckless and improvident appropriations for public purposes must be found in the character of those intrusted with the power of legislation, and in the integrity and firmness of the chief execu-

tive of the state." (*Daggett v. Colgan*, 92 Cal. 53, 27 Am. St. 95, 28 Pac. 51, 14 L. R. A., N. S., 474.)

The writ will issue as prayed for.

Wm. E. Lee, C. J., and Givens, J., concur.