(No. 6149.   May  18, 1934.)

CHARLES F. KOELSCH and CHARLES E. WINSTEAD,
   Plaintiffs, v. FRANKLIN K. GIRARD, Secretary of
   State of the State of Idaho, Defendant.

[33 Pac. (2d) 816.]

George Donart and Maurice H. Greene, for Plaintiffs.

Bert H. Miller, Attorney General, and M. A. Thometz, Assistant Attorney General, for Defendant.

454

PER CURIAM.—This action was instituted by the present incumbents of the offices of district judges of the third judicial district of the state of Idaho against the defendant, Secretary of State, to compel the latter to accept and file nonpartisan declarations of candidacy by plaintiffs to succeed themselves. The petition on which an alternative writ has issued sets forth the duties of the Secretary of State to file nonpartisan declarations of candidacy for the offices of district judge and of certifying the names of candidates to the auditors of the counties in each judicial district as provided in chapter 16 of the 1933 Session Laws of this state. It is further alleged that the Secretary of State has refused and will refuse, unless compelled by order of court, to perform those duties, based on his contention that said chapter 16 is void.

The defendant challenges the power of the legislature of this state to enact a primary law until such time at least as the Constitution may be amended so as to grant to the legislature such right. The power of the legislature to enact a primary law is not open to doubt. The legislative

power of the state is vested in the Senate and House of Representatives. (Const., art. 3, sec. 1.) The state legislature possesses all legislative power and authority, except in such instances and to such extent as the Constitutions of the state and of the United States have imposed limitations and restraints thereon. (*Kenneweg v. Alleghany County Commrs.*, 102 Md. 119, 62 Atl. 249; *Idaho Power & Light Co. v. Blomquist*, 26 Ida. 222, 141 Pac. 1083, Ann. Cas. 1916E, 282.) Counsel have not brought to our attention any provision of the state or federal Constitutions, and we are confident that there are none, which prohibit or limit the right of the legislature to pass a primary law. It follows that the legislature possesses such power. Primary laws enacted in other states have been upheld generally upon this principle. Our state Constitution is silent on the subject of political parties, consequently the legislature is not restrained by any rights of political parties. (*State v. Dunbar*, 39 Ida. 691, 230 Pac. 33.)

We have made no mention of article 6, section 4, of our Constitution, which is as follows: "The legislature may prescribe qualifications, limitations, and conditions for the right of suffrage, additional to those prescribed in this article, but shall never annul any of the provisions in this article contained." It is worthy of notice, however, that Justice Ailshie, in the case of *Adams v. Lansdon*, 18 Ida. 483, 110 Pac. 280, and Chief Justice McCarthy, in the case of *State v. Dunbar, supra*, refer to this section of our Constitution as authorizing the enactment of legislation similar in character to chapter 16 under consideration in this case.

Chapter 16 does not deal with or limit the right of suffrage. Every qualified elector of the state may vote for the candidate of his choice without interference. Any citizen of the state, possessing the necessary qualifications and complying with the terms of the act, may become a candidate for one of the judicial positions mentioned in said act.

The defendant also insists that the legislature may not enact a law for the nomination of a nonpartisan judiciary until judicial officers are declared nonpartisan. This

contention is without merit. The intent of the act in this respect is manifest by its terms. Nothing more is required.

The law in question provides only for the nonpartisan nomination of candidates for the offices of justices of the supreme court and district judges. The defendant contends that the legislature cannot provide for the nomination as nonpartisan or nonpolitical candidates of a part of the judiciary without also providing for the nomination as nonpartisan or nonpolitical candidates of all of the judiciary for the reason that such provision would be special legislation relating to less than an entire class and therefore invalid. He cites in support of this contention the case of *Ledgerwood v. Pitts,* 122 Tenn. 570, 125 S. W. 1036, which held invalid a primary law enacted in the state of Tennessee which excepted the offices of judges of the supreme court of the state and judges of the court of civil appeals, chancellors, criminal and circuit judges and attorneys general, but included by not making an exception thereof, the office of county judges, stating that the legislature could not exclude a part and leave a part to be chosen in the primary.

Article 5, section 2, of our Constitution vests the judicial power of the state in a court for the trial of impeachments, a supreme court, district courts, probate courts and courts of justices of the peace. It also provides for other courts inferior to the supreme court which may be established by law for any incorporated city or town, none of which have as yet been established. These courts differ from each other in the jurisdiction exercised by them and the territorial limits within which such jurisdiction is exercised. The supreme court, district courts and probate courts in matters of probating estates and guardianship are courts of record. In matters of civil and criminal jurisdiction, other than those of probate procedure and guardianship, probate courts and courts of justices of the peace are not courts of record. District courts are the only courts in this state of general original jurisdiction in all cases at law and in equity. The supreme court has jurisdiction to review upon appeal any decision of the district courts or the judges thereof and may

also issue extraordinary writs. The supreme court therefore has appellate jurisdiction of all cases at law and in equity. Justices of the supreme court and district judges are state officers. Probate judges and justices of the peace are county officers or precinct officers.

Chapter 16 does not deal with judicial power or jurisdiction nor the conditions under which judicial power may or may not be exercised. Differing from the supreme court of Tennessee in the case last above mentioned, we are of the opinion that all the above enumerated officers do not constitute an indivisible class in respect to methods of nomination of candidates for such offices merely because all exercise judicial power. We think the broader jurisdiction exercised by the supreme court and district courts, together with the fact that they are state officers, is sufficient justification for the legislature to put such justices and judges into one class in respect to the method of their nomination for such offices. The classification appears to be reasonable and to rest upon distinctions that are substantial.

■ ■ The defendant next contends that chapter 16 of the 1933 Session Laws, and chapter 185 of the 1933 Session Laws, relative to the placement of judicial candidates on the primary ballots are in such irreconcilable conflict as to invalidate said chapter 16. Chapter 16 provides for the nonpartisan nomination of candidates for justices of the supreme court and district judges and also provides that the ballots in the primary election for such officers shall be separate from the respective party primary ballot and shall be printed on paper of a different color and that the judicial nominating ballots shall be deposited in separate ballot boxes from the ballots for partisan candidates. Chapter 185 is an act amending the general primary law enacted by the 1931 session of the legislature, being chap. 6, I. C. A. In it provision is made for filing with the proper officer declaration of candidates for nonpolitical offices. It also contains provisions for the placing of the names of candidates for nonpolitical offices upon the general primary ballot at the top of the first column on the ballot of each political party.

Neither chapter 16 nor chapter 185 contains an emergency declaration and therefore both went into effect at the same time. Chapter 185, however, was approved after chapter 16 was approved by the Governor. If nonpartisan and nonpolitical are synonymous terms, it is evident that chapter 16 is in irreconcilable conflict with those provisions of chapter 185 which provide for the nomination of nonpolitical candidates in so far as the nomination of the judicial officers named in chapter 16 are concerned. It would appear that the conflict is partial and not entire since the provisions of chapter 185 for nomination of nonpolitical candidates would probably be effective in case the legislature shall hereafter declare other offices to be nonpolitical.

When statutes are necessarily inconsistent the statute which deals with the common subject matter in a more minute and particular way will prevail over a statute of a more general nature. (*Peavy v. McCombs*, 26 Ida. 143, 140 Pac. 965.) In other words, a statute dealing expressly with the nomination of certain judicial officers will prevail over the provisions of a general nominating statute which deals generally with nonpolitical offices.

Finally the defendant contends that in view of the provisions of sections 33–639 and 33–640, I. C. A., providing for the nomination and certification of judicial candidates nominated at conventions, chapter 16 of the 1933 Session Laws is invalid as an infringement of the right of suffrage. The two sections above referred to provide that conventions of electors or delegates representing a political party or principle, but not constituting a political party, as defined by the act, may nominate candidates for the various state and county offices and provides that such nominations may appear on the ballot at the general election. If chapter 16 is valid candidates for the judicial positions therein indicated could not be nominated at a nominating convention because chapter 16 provides the exclusive method of making such nominations. It is sufficient to say that such conventions do not have any greater rights than political parties. As noted above, the right of suffrage is not impaired.

The alternative writ is ordered made peremptory.

Justice Morgan, deeming himself disqualified, did not sit with the court nor participate in the opinion. District Judge Rice sat with the court and acted in his stead.