(No. 6502.    May 6, 1938.)

STATE on Relation of S. H. WALTON, S. H. WALTON, Jr., LEO WALTON and OPAL WALTON, Husband and Wife, and VRENON WALTON, a Minor, by J. W. GALLOWAY, as His Guardian *Ad Litem,* Appellants, v. HARRY C. PARSONS, as Auditor of the State of Idaho, Respondent.

[80 Pac. (2d) 20.]

E. B. Smith, for Appellants.

J. W. Taylor, Attorney General, and R. W. Beckwith and Lawrence B. Quinn, Assistants Attorney General, for Respondent.

PORTER, D. J.—In July, 1934, the department of public works of the state of Idaho was engaged in constructing a bridge over a canal on the Gooding-Fairfield state highway about three and one-half miles north of Gooding, Idaho. During the night of the 15th of that month, S. H. Walton, driving an automobile along and over said highway, ran into some timbers allegedly left lying across such highway by employees of said department, without lights or other warning signs. Walton was accompanied by his sons, Leo Walton and S. H. Walton, Jr., Opal Walton, the wife of Leo, and Vrenon Walton, the minor child of Leo and Opal Walton. The automobile was damaged and the occupants injured.

In February, 1935, the Waltons presented to the state board of examiners a claim for damages in the sum of $3,000, which board ruled it had no jurisdiction in the premises. The Waltons then presented a claim for that amount to the 24th (1937) session of the legislature, which enacted as follows:

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF IDAHO: `

"WHEREAS, During the month of July, 1934, the department of public works of the state of Idaho, acting through its employees, was engaged in constructing a certain bridge over a canal about three and one-half miles north of Gooding, Idaho, on the Gooding-Fairfield state highway, and

"WHEREAS, said employees of said department of public works during the night of July 15, 1934, left a pile of creosoted bridge timbers lying crosswise to the oiled highway at a point where said bridge was being constructed by it, without any barriers, lights, or other warning signs being set out at said point to warn the travelers from the north of the presence of said pile of creosoted timber, and

"WHEREAS, During said night and on or about 1:00 o'clock, A. M., of July 16, 1934, one S. H. Walton, while driving an automobile belonging to his son, S. H. Walton, Jr., along said highway at said point, accompanied by his son, Leo Walton, his son, S. H. Walton, Jr., Opal Walton, the wife of the said Leo Walton, and one Vrenon Walton, the minor child of the said Leo Walton and Opal Walton, with-

out any fault upon the part of the driver or any of the occupants of said car, ran into said pile of creosoted timber, injuring all of the occupants of said car and damaging said car, and

"WHEREAS, the injuries to said persons and the damage to said car were directly due to the neglect of the employees of the department of public works of the State of Idaho in leaving said cresoted timber lying on said oiled state highway without having set up any barriers, lights or other warning of the presence of said timber, and

"WHEREAS, the injuries to the above named five persons, including the damage to said car, so caused by the employees of the department of public works of the State of Idaho, resulted in damages in the total amount of $3,000.00, none of which has ever been paid;

"NOW, THEREFORE, BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF IDAHO:

"SECTION 1. There is hereby appropriated from any money in the General Fund, not otherwise appropriated, the sum of $3,000.00, for the relief and reimbursement of the said S. H. Walton, S. H. Walton, Jr., Leo Walton, Opal Walton and Vrenon Walton, on account of the matters hereinabove set forth, and the State Auditor is hereby authorized and directed to draw and deliver to the said S. H. Walton a warrant on the State Treasury and against the General Fund, in favor of the said S. H. Walton, S. H. Walton, Jr., Leo Walton and Opal Walton, and the State Treasurer is directed to pay the same on presentation.

"SECTION 2. An emergency existing therefor, this Act shall take effect and be enforced from and after its passage and approval.

"Approved February 5, 1937."

Thereafter, a voucher in the form in use by the state of Idaho, requesting payment of the sum so appropriated, was presented to the state board of examiners, which board, upon the advice of the attorney general, again refused to authorize payment of the claim. Following the last refusal, and on March 27, 1937, the state, on the relation of the Waltons, filed a petition for a writ of mandate in the District Court of the Third Judicial District of the State of Idaho, in and for

Ada County, against Harry C. Parsons, as auditor of the state of Idaho, praying for an alternative writ of mandate commanding the said state auditor to issue a warrant on the treasury of the state of Idaho for the sum of $3,000 in favor of petitioners, and that upon the hearing of the petition a peremptory writ of mandate issue in favor of petitioners and against the state auditor. March 27, 1937, an alternative writ issued and on the same day was served on the auditor. April 16, 1937, the state auditor answered the alternative writ, and, on the 27th of that month, the relators filed and interposed a general demurrer to such answer. May 15, 1937, the court overruled and denied relators' demurrer to respondent's answer. May 29, 1937, the trial court entered final judgment quashing the alternative writ of mandate theretofore issued, denied a peremptory writ, and dismissed the proceedings, from which judgment relators appealed to this court.

The only question presented to this court for consideration is as to the constitutionality of the above act of the legislature. Respondent attacks the act as violative of the Constitution of the state of Idaho upon several grounds, among which are the following: (1) That the act constitutes a gift of public moneys to private persons for a private purpose, contrary to implied constitutional limitations; (2) That the act is retroactive legislation and in violation of the provisions of article 11, section 12 of the Idaho Constitution, reading as follows:

"The legislature shall pass no law for the benefit of a railroad, or other corporation, or any individual, or association of individuals retroactive in its operation, or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past."

Our Constitution does not in express terms forbid an outright gift by the legislature of public moneys to an individual. Neither does the Constitution specifically require that taxes shall be levied and collected by general laws for public purposes only.

It is well recognized that the power to levy and collect taxes and the power to appropriate public funds are coexistent and rest upon the same principle. If a tax cannot

be levied for a particular purpose, no appropriation of public money can be made for such purpose. (*Gem Irr. Dist. v. Van Deusen*, 31 Ida. 779, 176 Pac. 887; *Mills v. Stewart*, 76 Mont. 429, 247 Pac. 332, 47 A. L. R. 424.) It is also well settled that taxes cannot be levied and collected, or an appropriation made, for other than a public purpose or in furtherance of the public welfare, and that any attempt so to do is a violation of the implied limitations of the Constitution.

In the dissenting opinion of Justice Leeper in *Oregon Short Line R. R. Co. v. Berg*, 52 Ida. 499, 514, 16 Pac. (2d) 373, which was not at variance with the majority decision of the case on this point, the principle was announced as follows:

"It is to be noted that the Idaho Constitution contains no provision requiring that taxes be levied for a public purpose, or anything of similar import. That, however, is necessarily implied, as the very foundation of the power to tax is the presence of a public purpose to be subserved by the expenditure for which the taxes are raised. (1 Cooley on Taxation, 4th ed., p. 381, sec. 174.)"

In 61 C. J., p. 88, sec. 18, it is said:

"Even when there is no express restriction in the constitution, there is an implied restriction under which the legislature cannot rightfully impose taxes for the benefit of private persons or in aid of private uses or enterprises. This restriction grows out of the essential nature and purposes of all free governments, and is inherent in the subject itself, and implied in all definitions of 'taxes' and 'taxation.'"

In *State ex rel. McPherren v. Carter*, 30 Wyo. 22, 215 Pac. 477, 479, 28 A. L. R. 1089, the court said:

"For the purpose of this case, at least, we shall assume that, if the appropriation in question is merely a gift or donation, it is void, not alone because it is expressly prohibited by the sections of the Constitution referred to, but also because the purpose of such appropriation would then be private, and not public, for it is elementary that the Legislature cannot levy a tax or make an appropriation except only for public purposes, and this is true whether the Constitution so expressly provides or not."

In the well-considered case of *Hawks v. Bland,* 156 Okl. 48, 9 Pac. (2d) 720, 723, the court cites numerous authorities on this point and summarizes the rule as follows:

''An appropriation for a purpose not public is inconsistent with the duty of maintenance of a republican form of government guaranteed by State and Federal Constitution. . . . . It is contrary to implied and express limitations of governmental power which is essential to all free governments.''

Appellants seek to avoid the application of this principle, and contend (1) that the state was under a moral obligation to appellants, and (2) that an appropriation to satisfy a moral obligation is for a public purpose. .

It has been repeatedly decided by this court and by the courts of many jurisdictions that the state is not liable for the torts of its officers and agents, unless such liability is expressly assumed. (*Davis v. State,* 30 Ida. 137, 163 Pac. 373, Ann. Cas. 1918D, 911; *Strickfaden v. Greencreek Highway Dist.,* 42 Ida. 738, 248 Pac. 456, 49 A. L. R. 1057.) There is no liability upon the state, not merely because there is no means of enforcing the same, but because there is no fundamental obligation existing. In *Davis v. State, supra,* this court quoted with approval from *Murdock Parlor Grate Co. v. Commonwealth,* 152 Mass. 28, 24 N. E. 854, 8 L. R. A. 399, as follows:

''But we do not find that demands founded on the neglect or torts of ministerial officers engaged as servants in the performance of [ministerial] duties which the state as a sovereign has undertaken to perform have ever been held to render it liable. Nor does this rest upon the narrow ground that there are no means by which such obligations can be enforced, but on the larger ground that no obligations arise therefrom.''

It seems to us that instead of there being a moral obligation on the state to assume liability in this special case, it would on the contrary offend against right and justice for one citizen to be made the recipient of the solicitude of the state to the exclusion of other citizens similarly situated.

A gift is a gratuitous transfer of the property of the state voluntarily and without consideration; and a so-called moral obligation will not sustain an appropriation unless such

appropriation be made in furtherance of some public purpose. In *San Diego County v. Hammond*, 6 Cal. (2d) 709, 59 Pac. (2d) 478, 484, 105 A. L. R. 1155, the court said:

"It is well settled that in determining whether any appropriation of public funds is to be deemed a gift, 'The primary and fundamental subject of inquiry is as to whether the money is to be used for a public or a private purpose. If it is for a public purpose. . . . . it is not, generally speaking, to be regarded as a gift.' "

There is no declaration of any public policy in the act in question, nor any legitimate inference from the facts therein set out that any public purpose is being served.

In the early case of *Bourn v. Hart*, 93 Cal. 321, 28 Pac. 951, 27 Am. St. 203, 15 L. R. A. 431, an action wherein an appropriation had been made to compensate a state employee injured through the negligence of his superior officer, the rule was laid down, as follows:

"A legislative appropriation made to an individual in payment of a claim for damages on account of personal injuries sustained by him while in its service, and for which the state is not responsible, either upon general principles of law or by reason of some previous statute creating such liability, is a gift, within the meaning of the constitution. The appropriation made to petitioner was a mere gratuitous assumption of an obligation from which the state was and is exempt, and is within the mischief which the framers of the constitution intended to remedy by the sections before referred to."

Appellants further contend that the legislature can assume responsibility for the torts of its officers and agents, and that by the act in question the state has assumed responsibility toward appellants. We do not question the right of the state to expressly assume responsibility for the torts of its officers and agents by a law of general application operating prospectively. But the state cannot assume responsibility for such a tort committed in the past, by a special retroactive legislative act. Quoting further from *Bourn v. Hart, supra*:

"The exemption of the state from paying damages for accidents of this nature does not depend upon its immunity from being sued without its consent, but rests upon grounds of public policy which deny its liability for such damages. It

is argued, however, that the state has in this instance assumed and acknowledged its liability by the act under consideration. But this is precisely what the legislature is forbidden to do. . . . . If the state desires to make itself liable for such .damages as may be sustained by those in its service, it must do so by a general law, which shall embrace all cases which may come within its provisions.''

California has consistently followed the holding of *Bourn v. Hart, supra.* (*Veterans' Welfare Board v. Jordan,* 189 Cal. 124, 208 Pac. 284, 22 A. L. R. 1515; *San Diego County v. Hammond, supra.*) It is also approved and followed in the Oklahoma case of *Hawks v. Bland, supra.*

We are not unmindful that authorities from some other jurisdictions apparently have. taken views contrary to those expressed herein, but an examination of such authorities will disclose that in each case the decision was grounded upon some claim of public policy, such as compensation for services over and beyond official duties by officers of the state, or, as in the Montana case of *Mills v. Stewart, supra,* where a student at the university was compensated for injuries on the ground that a matter of public policy was involved in the handling and maintaining of a state university.

We do not determine that the legislature could or could· not make an appropriation in satisfaction of a moral obligation where some public policy would be served and the relief to the individual merely incidental. However, in the instant case the act in question is a special act, retroactive in effect, for the relief of private individuals, and for a private purpose and not for a public purpose. We hold that the act is unconstitutional as violative of the implied limitations of the Constitution forbidding a gift by the legislature of public money; and is retroactive, in violation of article 11, section 12 of the Constitution.

The judgment is affirmed. No costs awarded.

Holden, C. J., Ailshie, Budge and Givens, JJ., concur.

Morgan, J., deemed himself disqualified and Porter, D. J., was called to sit in his stead.