289 P.2d 614

Robert S. DAVIS, Russell E. Siefert, Emil W. Christensen, Paul E. Youmans, E. J. Prescott and John I. Tuttle, as a bondholders committee representing the holders of Dormitory Revenue Bonds of 1950 of Northern Idaho College of Education, Plaintiffs,

v.

Ruth MOON, Treasurer of the State of Idaho, Defendant.

No. 8325.

Supreme Court of Idaho.

Nov. 2, 1955.

Willis C. Moffatt, Boise, for plaintiffs.

148

Graydon W. Smith, Atty. Gen., J. R. Smead, J. N. Leggat, Asst. Attys. Gen., for defendant.

SMITH, Justice.

September 15, 1950, the state board of education acting as the board of trustees of Northern Idaho College of Education determined that such college needed an additional dormitory. The board thereupon, pursuant to its resolution adopted, and au-, thority of Idaho Code, Title 33, C. 38, known as the Educational Institutions Act of 1935, issued and sold $375,000 interest bearing "Dormitory Revenue Bonds of 1950", in

denominations of $1,000 each and, with the proceeds therefrom, caused the dormitory to be constructed. The building is the property of the State of Idaho. Net incomes from such and other dormitories of the college were pledged in payment of the bonds.

The bonds were issued on an amortization basis with payments of the principal sum to become due November 1, 1952, and on November 1 of each year thereafter until paid, and interest to become due semi-annually on May 1 and November 1 of each year, beginning May 1, 1952. The bonds were made payable at First Security Bank of Idaho, National Association, Lewiston Branch, Lewiston, Idaho, designated by the board of trustees, pursuant to Idaho Code, sec. 33–3806(h), as the paying agent for the purpose of paying the principal and interest of the bonds.

The 31st Legislature, at its regular session of 1951 did not make an appropriation to the state board of education for operation of Northern Idaho College of Education. The college, because of resulting lack of funds, ceased operating as such during the summer of 1951, and did not operate in any capacity until about September 1, 1955; during such time it did not have any students or faculty, nor derive any revenue from the dormitory constructed from the proceeds of such bond issue, or from its other dormitories.

The 33rd Legislature, at its regular session of 1955, by amendment to Idaho Code, sec. 33–3101, Idaho Sess. Laws 1955, c. 76, changed the name of Northern Idaho College of Education to Lewis-Clark Normal School; provided that its course of study, to cover a period equivalent to not more than two years, be designed to train teachers for elementary schools; transferred jurisdiction of the school to the state board of education and the board of regents of the University of Idaho; provided that all references in existing statutes to Northern Idaho College of Education be construed as referring to the normal school under its new name, and made an appropriation to the state board of education for the educational purposes of the school for the bi-ennium July 1, 1955 to June 30, 1957.

The 33rd Legislature also enacted Idaho Sess. Laws 1955, c. 277, which became law without approval of the governor. The legislature thereby created the "Dormitory Bond Redemption Fund" in the state treasury and appropriated thereto $100,000 to be disbursed by the state treasurer in accordance with the provisions of the act.

The act provides that the state treasurer shall remit a sufficient sum to First Security Bank of Idaho, National Association, Lewiston Branch, Lewiston, Idaho, as the designated paying agent of said bond issue, to pay the principal sum of bonds Nos. 1 to 25, inclusive, and the interest accrued upon all of the bonds as of May 1, 1955; that the bank shall pay the same after notice given as by the act provided, upon presenta-

150

tion of the bonds to the bank by May 1, 1955, and upon receipt of such sum by the bank from the state treasurer pursuant to the bank's claim presented to the treasurer for an amount sufficient to pay such bonds and interest.

The act directs the state board of education to use available moneys for the payment of interest when due upon the bonds which have not matured and the principal thereof as the same becomes due; and provides that if there be insufficient funds for such purposes the state treasurer, upon notification as by the act provided, shall transmit to the bank as paying agent funds sufficient to pay such obligations.

The act then provides that any bonds retired by payment from the dormitory bond redemption fund shall be delivered to the state treasurer and by such officer held for future reimbursement from sources pledged for payment of the bonds.

The state treasurer refused to honor a claim of the bank as paying agent and to transmit to it the moneys for payment of bonds Nos. 1 to 25, inclusive, and the accrued bond interest.

Plaintiffs, petitioners, thereupon made original application to this Court for an alternative writ of mandate compelling defendant as state treasurer to transmit to the bank as paying agent sufficient moneys to pay the principal of said bonds and the interest, in conformity with the provisions of Idaho Sess.Laws 1955, c. 277, or show

cause why she as treasurer should not do so. The alternative writ issued commanding defendant to make such payment. Defendant thereupon moved to quash the alternative writ.

Defendant urges as her first ground for quashing the writ that Idaho Sess.Laws 1955, c. 277 is unconstitutional in that it loans the credit of the State of Idaho to, or in aid of, individuals and corporations contrary to Idaho Const. art. VIII, sec. 2.

Defendant contends that the legislature by enactment of Idaho Sess.Laws 1955, c. 277, attempted to convert into a debt of the state that which is not and never was so intended when the bonds were issued and, that a moral obligation will not sustain the appropriation unless made for a public purpose, citing State v. Parsons, 58 Idaho 787, 80 P.2d 20, Educational Institutions Act of 1935, and particularly I.C. secs. 33–3809 and 33–3810.

It is true that under said act the owners of the dormitory revenue bonds had no claim against the general fund of the state of Idaho but only against dormitory funds; but it is also true that, pursuant to its legislatively delegated authority the state board of education had determined the dormitory incomes, available by the operation of the school, as amply sufficient to pay off and retire the thereupon authorized issue of dormitory bonds according to the contractual obligations thereof. It is likewise true that the Northern Idaho College of

Education became inoperative and incomes to its dormitory funds became nil by reason of the inaction of Idaho's legislature at its general session of 1951.

The state could have accomplished the construction of the dormitory building in the first place and put into operation a plan for the payment of the building. The state owns the building, acquired through its "governmental instrumentality for the dissemination of knowledge and learning", I.C. sec. 33–3803; but as yet no part of the cost of construction of the building has been paid. Certainly the state through its legislature possesses the power to pay for the building, or to put into effect a plan designed to pay for it, including the authority to levy and collect taxes therefor if necessary and appropriate the proceeds to reimburse and pay to the bondholders the moneys expended and furnished in the construction of the building, provided that the building serves a public purpose; Ada County v. Wright, 60 Idaho 394, 409, 92 P.2d 134.

The legislature has absolute control over the finances of the state. The power of the legislature as to the creation of indebtedness, or the expenditure of state funds, or making appropriations, is plenary, except only as limited by the state Constitution. State ex rel. Davis v. Banks, 33 Idaho 765, 198 P. 472; State ex rel. Macey v. Johnson, 50 Idaho 363, 296 P. 588; Robinson v. Enking, 58 Idaho 24, 69 P.2d 603; State v. Parsons, 58 Idaho 787, 80 P.2d 20; Utah Oil Refining Co. v. Hendrix, 72 Idaho 407, 242 P.2d 124. Furthermore the Constitution nowhere prohibited the legislature from enacting Idaho Sess.Laws 1955, c. 277, nor thereby amending or modifying the contract which its governmental instrumentality, the state board of education, entered into with the holders of the dormitory revenue bonds pursuant to the Educational Institutions Act of 1935; particularly is this true inasmuch as no vested right appears affected adversely by such legislation, and since the bondholders indicate herein their desire to accept the conditions of such legislation. The legislature has unlimited power to legislate where legislation is not prohibited. State ex rel. Macey v. Johnson, supra; Koelsch v. Girard, 54 Idaho 452, 33 P.2d 816; McGoldrick Lumber Co. v. Benewah Co., 54 Idaho 704, 35 P.2d 659; Boughton v. Price, 70 Idaho 243, 215 P.2d 286; Utah Oil Refining Co. v. Hendrix, supra.

Inquiry is now in order to determine whether the appropriation evidenced by Idaho Sess.Laws 1955, c. 277 is intended to be used for a public or a private purpose.

The purpose of such appropriation act is set forth in section 1 thereof as follows:

"Section 1. *The State Board of Education* of the State of Idaho, acting as the board of trustees of the Northern Idaho College of Education, *did,* on November 1, 1950, *pursuant to authority granted by Chapter 38, Title 33, Idaho Code, issue and publicly sell*

*dormitory revenue bonds of the Northern Idaho College of Education* in the principal sum of Three Hundred Seventy-five Thousand ($375,000.00) Dollars *for the purpose of constructing a dormitory at said institution, and the proceeds from the sale of said bonds were expended for such purpose.* Pursuant to the Statutes of the State of Idaho and the proceedings taken by the Board of Education of the State of Idaho, *the principal and interest of said bonds was to be paid from income obtained from the rentals and operation of all dormitories* at the Northern Idaho College of Education. The said bonds are now held by the purchasers thereof in good faith and were so purchased under the terms and proceedings of sale and the Statutes of the State of Idaho. The terms and conditions of said bonds provide for the payment of interest semi-annually on November 1 and May 1 of each year, and for the retirement of the principal amount of said bonds on an amortized basis from one to twenty years from date of issue, beginning November 1, 1952. *The income from the dormitories pledged to the payment of principal and interest has been and probably for some time will be insufficient to pay the obligations of said bonds due to the inactive status of the Northern Idaho College of Education and interest on the whole of said bond issue has been in default* since May 1, 1951, *and the principal of the amount due on bonds* maturing on November 1, 1952, 1953 and 1954 *is in default* and there will be principal and interest payable in accordance with the terms of said bonds during 1955 and 1956. *The Legislature of the State of Idaho, recognizing that the dormitory bonds* of the Northern Idaho College of Education issued, as set forth herein, by the State Board of Education of the State of Idaho, acting as the trustees of the Northern Idaho College of Education, *constitute the valid obligation of an instrumentality of the State of Idaho to the holders of such bonds and desiring to protect the credit of this and other institutions of higher learning in the State of Idaho,* makes this enactment for the purpose of fulfilling the obligations of said bonds in accordance with the terms thereof." (Emphasis supplied.)

The purpose of the referred to "Chapter 38, Title 33, Idaho Code," which is the Educational Institutions Act of 1935, is stated "to preserve the public peace, health and safety, * * *." Idaho Sess.Laws 1935, 1st. E.S., c. 55, sec. 15. Such act includes the Lewis-Clark Normal School under its name as so changed by Idaho Sess.Laws 1955, c. 76. The legislature established that school for the purpose of "training and educating teachers in the art of instruction

and governing in the public schools of this state, and teaching the various branches that pertain to a good public school education." I.C. sec. 33–3101. While Idaho Sess.Laws 1955, c. 76, changed the word "public" to "elementary", nevertheless such schools continue as a part of the public school system of this state.

Said act defines "board", inter alia to mean the state board of education, which has vested in it the general supervision of the educational institutions and public school system of the State of Idaho; Idaho Const. art. IX, sec. 2; "bonds" therein defined means the bonds issued by an educational institution named in the act, and "project" includes any structure or improvement which may be required by, or convenient for the purpose of any such institution, including dormitories. The act further provides that each institution named therein, including Northern Idaho College of Education, now called Lewis-Clark Normal School, is hereby "constituted and confirmed as a governmental instrumentality for the dissemination of knowledge and learning".

It thus becomes clear that the appropriation here under consideration cannot in any sense be regarded as intended for use in furtherance of any private purpose. On the contrary, the appropriation is designed and intended to be expended in payment of a building acquired by Lewis-Clark Normal School as a part of its plant

"required by or convenient for the purposes" of such school, I.C. sec. 33–3802, "as a governmental instrumentality for the dissemination of knowledge and learning". I.C. sec. 33–3803. The public purpose of the appropriation and its expenditure as so intended, in the interests of the public good, in furtherance of the educational objectives of the state, is clearly expressed.

The furtherance of education is universally regarded as a public purpose. The Constitution makes it the mandatory duty of the legislature to establish and maintain a general, universal and thorough system of public, free common schools, also to establish and support educational institutions as the public good may require. An educational institution is established for no personal profit and serves only the public benefit. Idaho Const. art. IX, sec. 1 and art. X, sec. 1; In re Opinion of the Justices, N.H., 114 A.2d 801.

Moreover, the appropriation act here under consideration is saved from conflict with Idaho Const. art. VIII, sec. 2, providing that, "The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual, association, municipality or corporation * * *" by the fact that such enactment is for a public purpose. Newland v. Child, 73 Idaho 530, 254 P.2d 1066. Further, the enactment is not invalidated, in the light of its public purpose, merely because the obligation of the state in relation to the subject matter of such legislation is a moral rather than a

154

mandatory one, Gem Irrigation District v. Gallet, 43 Idaho 519, 253 P. 128; Newland v. Child, supra; 81 C.J.S., States, § 133, p. 1150; 42 Am.Jur. Public Funds, sec. 621, p. 763, nor by the fact that a private individual or organization may benefit thereby. Newland v. Child, supra; Krebs v. Board of Trustees of Teachers Retirement System, 410 Ill. 435, 102 N.E.2d 321, 27 A.L.R.2d 1434; Stanley v. Jeffries, 86 Mont. 114, 284 P. 134, 70 A.L.R. 166; Veterans Welfare Board v. Jordan, 189 Cal. 124, 208 P. 284, 22 A.L.R. 1515; San Diego County v. Hammond, 6 Cal.2d 709, 59 P.2d 478, 105 A.L.R. 1155; Butler v. Compton Junior College Dist., Cal.App., 176 P.2d 417; 81 C.J.S., States, §§ 134, 137b, pp. 1161, 1169; 42 Am.Jur. Public Funds sec. 5, p. 75.

Defendant urges as its remaining ground for quashing the writ, that Idaho Sess.Laws 1955, c. 277 is unconstitutional in that the act requires the state treasurer to disburse state funds without examination by the state board of examiners of a claim against the state, contrary to Idaho Const. art. IV, sec. 18. The contention is not well taken.

The appropriation is not intended to be expended in payment of any claim coming within the purview of said provision of the Constitution. This is true simply because no claim in the premises existed against the state prior to the enactment of the act, and none exists or can come into existence against the state by reason of the enact-ment; as heretofore stated the appropriation is intended for payment of a public building required by, or convenient for the purposes of the normal school "as a governmental instrumentality for the dissemination of knowledge and learning". I.C. secs. 33–3802, 33–3803.

Defendant's contention is further answered by Gem Irrigation District v. Gallet, 43 Idaho 519, 528, 253 P. 128, 131, in applicable language, as follows:

"In its last analysis, the appropriation sanctions the direct improvement and protection of the state's own property. It is a cash transaction in which the Legislature has determined that the state shall receive its *quid pro quo*. The state gives nothing; it lends nothing; it recognizes and discharges a moral obligation for past benefits accrued and of necessity further to accrue. The sole object of the act was the creation and maintenance of a public use."

Defendant's motion to quash the alternative writ is denied. The writ is made permanent.

TAYLOR, C. J., and PORTER and ANDERSON, JJ., concur.

KEETON, Justice (dissenting).

Dissenting opinions are probably of little general value. However, my conclusions in this proceeding differ so widely from

those reached by the majority of the Court, and the question submitted being of general public importance, I shall briefly state my views in the premises.

In November, 1950, the State Board of Education, pursuant to authority, Tit. 33, Ch. 38 I.C., issued $375,000 worth of interest bearing dormitory, special improvement, revenue bonds, to be paid only from revenue pledged for such payment.

The Act authorizing the issuing of the bonds Sec. 33–3810 I.C., specifically provides:

"All bonds issued pursuant to this act shall be obligations of the institution issuing such bonds payable only in accordance with the terms thereof and shall not be obligations general, special or otherwise of the state of Idaho. Such bonds shall not constitute a debt, legal or moral, of the state of Idaho, shall so recite on their face, and shall not be enforceable against the state, nor shall payment thereof be enforceable out of any funds of the institution issuing said bonds other than the income and revenues pledged and assigned to, or in trust for the benefit of, the holder or holders of such bonds."

The bonds contain the provision:

"The bonds of this issue are obligations of the College payable only in accordance with the terms hereof and shall not constitute a debt, legal or moral, of the State of Idaho and shall not be enforceable against the State nor shall payment thereof be enforceable out of any funds of the College other than the income and revenues pledged and assigned to the holder or holders of such bonds."

Sec. 33–3809, I.C., specifically prohibits any institution named in the Act from contracting debts for which the State shall in any manner be liable.

The bonds thus issued, dated November 1, 1950, are payable over a period of thirty years, starting with 1952, and ending in 1980. Such bonds were sold on the market and thereafter defaulted, the revenues pledged to their payment being insufficient to pay them according to their tenor.

The holders of such defaulted bonds now ask the State to bail them out, and $100,000 was by the Thirty-third Session of the Legislature, 1955 S.L., Ch. 277, p. 663, sec. 3, p. 665, appropriated to pay the defaulted bonds numbered 1 to 25 and accrued defaulted interest due upon all bonds to May 1, 1955. Said Legislative Act further provides that on payment of such sums to the bondholders, the State of Idaho shall be entitled to all rights of the holders, including a lien upon revenues pledged to the payment of said bonds.

Representatives of the bondholders pursuant to the Act presented a claim to the State Treasurer and demanded payment.

The Treasurer refused to honor the voucher on the ground that Ch. 277, 1955 S.L., p. 663, Senate Bill No. 214, appropriating said money, is in conflict with Art. 8, Sec. 2, of the Constitution which reads in part as follows:

"The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any *individual*, association, municipality or corporation; * * *." (Emphasis supplied.)

It seems to me plain and apparent that the Legislature by Ch. 277, 1955 S.L., converted a debt owed to individuals by a State educational institution into a State obligation, which debt or obligation never existed or could exist. The Legislature has attempted to appropriate public moneys for the payment of bonds, principal and interest which never did and never could create an obligation of the State. The bonds were made collectible and enforceable only out of funds of the College pledged for such purpose and the bonds on their face specifically so provide.

The State thus acquiring such defaulted bonds must of necessity have entered into the bond buying business, which is not a function of State government.

If the State can buy the defaulted bonds I see nothing to prevent the purchase of many other similar special improvement, defaulted obligations and see no reason why school improvement bonds, Junior College bonds, or any other similar defaulted issue, if any there are, cannot be transferred to the State under similar Acts of the Legislature. Under similar reasoning the State could take up special improvement highway bonds issued by road districts, counties or cities on the theory that schools and roads. are a proper function of government.

By the Act the Legislature has ignored the specific terms and conditions under which the bonds in question were issued.

It seems to me that the conclusion is inescapable that the Act aids only the bondholders, and the credit of the State is loaned to such bondholders as individuals. The Act in question being constitutional, as held by the majority, I can visualize continual raids on the State Treasury. Pressure groups and propaganda committees can advance logical arguments for similar future Acts, relieving most anybody from poor investments made on the credit of some State institution.

In my opinion the Act clearly violates Sec. 2, of Art. 8, of the Constitution and the Treasurer, defendant here, was correct in refusing to honor the bill when presented.

The alternate writ should be quashed and the proceeding dismissed.