(No. 5571.   May 22, 1930.)

JOHN LOGAN et al., Plaintiffs, v. GEORGE N. CARTER. Commissioner of Reclamation of the State of Idaho, H. C. BALDRIDGE, FRED E. LUKENS, W. D. GILLIS, EDWARD GALLETT and MYRTLE DAVIS, Commissioners of the State Land Board, and BLAINE COUNTY INVESTMENT COMPANY, a Corporation, BLAINE COUNTY CANAL COMPANY, a Corporation, M. H. WOODS, JOHN DIETRICH, HENRY STAUFFER, C. H. McDONALD and W. H. KARNS, Defendants.

[288 Pac. 424.]

G. F. Hansbrough and  J. H. Andersen, for Plaintiffs.

Peterson, Baum & Clark, for Blaine County Investment Company et al.

W. D. Gillis, Attorney General, and S. E. Blaine, Assistant Attorney General, for Defendants.

BUDGE, J.—This is an original proceeding in this court for a writ of mandate commanding the defendants Carter, commissioner of reclamation, Baldridge, Lukens, Gillis, Gallett and Davis, members of the state land board, to declare a forfeiture of a certain contract entered into by the state land board on behalf of the state and the Blaine County Irrigation Company on June 29, 1910, supplemented by a later contract in 1917. The Blaine County Investment Company, one of the defendants, is the successor of the Blaine County Irrigation Company. An alternative writ of mandate was issued. Defendants Carter, commissioner of reclamation, the members of the state land board, Blaine County Investment Company, Blaine County Canal Company and M. H. Woods filed demurrers to the petition and motions to quash the alternative writ.

The petition for the writ alleges the incorporation of the Blaine County Investment Company as the successor in interest of the Blaine County Irrigation Company; that such company was organized for the purpose of constructing an irrigation system and works and for the purpose of selling water rights for the irrigation of lands included in Carey Act Segregation, List No. 53, situated on Little Lost River in Butte county; that the Blaine County Canal Company is a corporation organized under the laws of this state and is the operating company; that the petitioners are purchasers and contract holders of water contracts from the Blaine County Investment Company and its prede-

cessor in interest, the Blaine County Irrigation Company, and are settlers and water users within the Carey Act segregation. The petition further alleges:

"That neither the said Blaine County Irrigation Company nor the Blaine County Investment Company have completed said irrigation system according to specifications or at all, nor to the extent that they or either of them could deliver the water sold to these petitioners and other contract holders on said project and have never completed said project or any part of it to the extent that said company could legally turn the project over to the Blaine County Canal Company, the holding or operating company of said investment company, as provided by law and their contracts with the state and settlers . . . .

"That the reclamation department and the above named commissioners are aware of these facts and have been for a number of years and have permitted this condition to exist, and that on or about September 19, 1929, a petition was filed with the department of reclamation bringing all of these facts to their notice by the above named petitioners and praying that the department immediately give notice and declare a forfeiture of the Blaine County Investment Company's contract with the state and provide for a sale of said project as provided by law and particularly as provided by section 3006 of the Compiled Statutes of Idaho, but the said department and the commissioners after further written demand upon them to act, served upon them on or about February 11, 1930, have failed, neglected and refused and still refuse to take any action whatever in the matter.

"Wherefore, plaintiffs and petitioners respectfully pray that an alternative writ of mandate issue out of this court commanding the said" defendants "to immediately give notice of forfeiture of said Blaine County Investment Company contract with the State of Idaho and for the sale of the said Blaine County project as provided by section 3006 of the Compiled Statutes of Idaho . . . . "

By demurrers and motions to quash, the point is raised, among others, that the members of the state land

board have no power or authority under the provisions of C. S., sec. 3006, or otherwise to forfeit or declare a forfeiture of the contract referred to upon the grounds alleged therein or otherwise, and that they or either of them are not proper or necessary parties defendant herein. We think this point is well taken. By C. S., sec. 350, the department of reclamation succeeded to and is vested with the rights, powers and duties of the state board of land commissioners in relation to the administration of the Carey Act. Since the acts which the petitioners would have performed, under C. S., sec. 3006, are directly concerned with administration of the Carey Act, it is apparent the members of the state land board are not proper parties to this proceeding. The demurrer to the petition and motion to quash the writ as to the defendant members of the state land board are therefore sustained and granted.

It is the contention of the petitioners that C. S., sec. 3006, is mandatory, and that upon the undenied allegations of the petition to the effect that, the Blaine County Investment Company and its predecessor in interest having defaulted in the completion of the contract with the state in accordance with the terms thereof and failed to deliver to the settlers the quantity of water contracted to be furnished, it is the duty of the commissioner of reclamation to declare the contract forfeited upon the giving of the notice and failure to comply therewith as in the statute provided; that it is the duty of the department of reclamation to give notice of the forfeiture of said contract by publication, and upon a fixed day after the prescribed period of publication to receive proposals for the purchase of ditches, canals, other irrigation works, water rights and all other rights, privileges and benefits obtained under the provisions of said contract and for the performance of the provisions of said contract with the state. Upon the other hand, it is the contention of the defendant commissioner of reclamation that the provisions of said statute are not mandatory, but discretionary; that no Carey Act contract can be forfeited except upon the exercise of discretionary power vested in the commis-

sioner of reclamation,—that is, that the provisions of said statute vest discretionary authority in the commissioner of reclamation to determine whether such a contract has been performed and completed, and as to when and under what circumstances a Carey Act contract will be forfeited; and that a writ of mandate will not issue to compel him to declare a forfeiture of such a contract in any particular manner.

C. S., sec. 3006, provides, in part:

"Upon the failure of any parties having contracts with the state for the reclamation of lands segregated under the Carey act to commence the construction of such ditches, canals or other irrigation works within the time specified by the contract or to perform all of the requirements of said contract within the time specified in said contract with the state *to the satisfaction of the department of reclamation*, it shall be the duty of the department to give such parties written notice of such failure, and if, after a period of 60 days from the sending of such notice, they shall have failed to proceed with the work or to conform to the provisions of their contract with the state, the bond and contract of such parties and all works constructed thereunder shall be at once and thereby forfeited to the state."

This portion of the statute may be divided into two divisions for the purpose of interpretation and application. In the first division it is provided that the contract may be forfeited upon failure of the parties to commence the construction of ditches, canals or other irrigation works within the time specified by the contract; that is, where no affirmative action is taken under the contract looking to its performance, ample justification might exist to warrant a holding that it was the mandatory duty of the commissioner of reclamation to forfeit the contract. That question, however, is not here for determination. Greater difficulty surrounds the second division, in the provision that "upon the failure of any parties having contracts with the state for the reclamation of lands segregated under the Carey act . . . . *to perform all of the requirements of said contract* within the

time specified in said contract with the state *to the satisfaction of the department of reclamation,* it shall be the duty of the department to give such parties written notice of such failure,'' etc.

The legislature must have had in mind some purpose that caused it to incorporate in this statute the qualifying terms ''to the satisfaction of the department of reclamation.'' Otherwise the statute would have provided for a forfeiture as it does where the parties fail to commence the construction of the irrigation works. Where the works have been substantially constructed and there is a substantial compliance with the contract,—the question might arise under a *bona fide* dispute as to whether or not all of the requirements of the contract had been performed, requiring the taking of evidence as to the character and extent of work done, construction of the terms of the contract, possible changes and modifications of its terms during the course of construction of the works, and numerous other questions of like importance,—it would not be reasonable to hold in the face of the clause in the statute plainly leaving this to be determined to the satisfaction of the department, that the commissioner could be compelled to declare a forfeiture. This proceeding is not one to determine whether or not there has been performance of all of the requirements of the contract in question or a substantial compliance with the contract, but seeks to compel immediate action on the part of the commissioner of reclamation to effect a forfeiture and to proceed in a certain manner to dispose of the system.

■■ *Mandamus* is employed to compel the performance, when refused, of a ministerial duty, this being its chief use. It may sometimes be employed to compel action, when refused, in matters involving judgment and discretion, but not to direct the exercise of judgment or discretion in a particular way. Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command it is regarded as being so far ministerial that its performance may be compelled by *mandamus,* unless there be provision or implication to the con-

trary. But where the duty is not thus plainly prescribed but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by *mandamus*. We do not think it can be logically contended from a careful study of the provisions of C. S., secs. 3006, 3007, that the duty of the commissioner to forfeit a Carey Act contract for failure of any parties having such contracts with the state to perform all of the requirements of said contract or to make substantial compliance therewith, is free from doubt and equivalent to a positive command so as to justify us in holding that his duty is purely ministerial.

In *Brooks v. Edgington*, 40 Ida. 432, 233 Pac. 514, the rule is announced to the effect that a party seeking a writ of mandate must have a clear legal right to have the act done, and it must appear that it is the clear legal duty of the officer to act. It has also been stated as the rule, in *State v. Banks*, 37 Ida. 27, 215 Pac. 468, and *State v. Malcom*, 39 Ida. 185, 226 Pac. 1083, that the issuance of a writ of mandate is discretionary, and when there is grave doubt justifying its issuance this discretion should not be exercised. If the provisions of C. S., sec. 3006, above set out are discretionary as applied to the facts of this case, as we believe them to be, or if the writ seeks to command the performance of a duty requiring the exercise of judgment or discretion in a particular way, which we are inclined to think it does, the writ should not issue. (*Saint Michael's Monastery v. Steele*, 30 Ida. 609, 167 Pac. 349; *Laird v. Terrell*, 32 Ida. 734, 187 Pac. 1081; *Blomquist v. Board of County Commrs.*, 25 Ida. 284, 137 Pac. 174; *Beem v. Davis*, 31 Ida. 730, 175 Pac. 959.)

We have carefully considered other questions raised by the defendants' demurrers and motions to quash, and have concluded there is no imperative necessity of discussing these questions. "It is a well-established rule, to which we know of no exception, that courts will not pass upon the validity of a statute, unless it is necessary to a decision of

the case before it." In this proceeding it is not necessary to pass on the constitutionality of the foregoing statutes. (*Board of Commrs. v. Mayhew,* 5 Ida. 572, 51 Pac. 411.)

From what has been said it follows that the case is not one in which *mandamus* will lie. The demurrers to the petition are sustained and the motions to quash the writ granted.

Givens, C. J., and Lee, Varian and McNaughton, JJ., concur.