794 P.2d 632
**IDAHO FALLS REDEVELOPMENT AGENCY, Petitioner,**

v.

**James COUNTRYMAN and Richard Hale, Respondents.**

No. 18239.

Supreme Court of Idaho.

July 3, 1990.

Elam, Burke & Boyd, Boise, for petitioner.  Ryan P. Armbruster argued.

Anderson, Pike & Bush, Idaho Falls, for respondents.  Dale W. Storer argued.

BOYLE, Justice.

In this original proceeding we are called upon to determine whether sufficient reasons and extraordinary conditions exist to warrant issuance of a writ of mandamus.[1]

The city of Idaho Falls established the Idaho Falls Redevelopment Agency (hereinafter "Agency") pursuant to the Idaho Urban Renewal Law of 1965.  I.C. § 50–2001 et seq.  The Idaho Urban Renewal Law authorizes each municipality within the state of Idaho to establish an "urban renewal agency" for the purpose of undertaking "urban renewal projects".  See I.C. § 50–2006; § 50–2007.  As amended in 1987, the Idaho Urban Renewal Law of 1965 allows revenue allocation financing by an urban renewal agency for a municipality with a population in excess of 100,000 residents.  I.C. § 50–2018 through § 2031.  The Local Economic Development Act al-

1.  As provided by I.C. § 7–301 the terms "writ of mandamus" and "writ of mandate" are interchangeable.  I.C. § 7–301 provides:

Designation.—The writ of mandamus may be denominated a writ of mandate.

lows the same revenue allocation financing procedures for municipalities with populations of less than 100,000 residents. I.C. § 50–2902 through § 50–2912.

In 1988 the Agency developed an urban renewal plan for the Lindsay Boulevard area of Idaho Falls. As provided in the Local Economic Development Act, the Agency adopted a revenue allocation financing provision as a means to fund the urban renewal plan. At issue is Agency Resolution No. 3, establishing a plan to issue bonds, payment of which will be made from the pledging of certain "incremental taxes." According to the plan, these incremental taxes will be derived from a portion of the city's ad valorem property taxes attributed to the increase in value of the property in the Lindsay Boulevard area.

Respondent James Countryman, the chairman, and Richard Hale, secretary of the Agency, have refused to publish a notice of sale of the bonds and to execute the bonds pursuant to Resolution No. 3. Respondents contend that the proposed issuance of the bonds violates Idaho law and numerous provisions of the Idaho Constitution relating to an election for voter approval prior to pledging tax proceeds, Idaho Constitution art. 8, § 3, and Idaho Constitution art. 8, § 4 and art. 12, § 4 which prohibit a municipality from lending or pledging credit to any association. As a result of respondents' refusal, the Agency seeks a writ of mandamus to compel them to perform their official duties.

## I. *Requirements for Issuance of Writ of Mandamus*

Article 5, § 9 of the Idaho Constitution and I.C. § 1–203 confer upon this Court original jurisdiction to issue writs of mandamus. As provided by I.C. § 7–302, a writ of mandamus,

[M]ay be issued by any court except a justice's or probate court, to any inferior tribunal, corporation, board or person, *to compel the performance of an act which the law especially enjoins as a duty resulting from an office,* trust or station; ... (Emphasis added.)

In *Utah Power & Light Co. v. Campbell,* 108 Idaho 950, 953, 703 P.2d 714, 717 (1985), this Court stated that "[m]andamus will lie if the officer against whom the writ is brought has a 'clear legal duty' to perform the desired act, and if the act sought to be compelled is ministerial or executive in nature." *See also Dalton v. Idaho Dairy Prods. Comm'n,* 107 Idaho 6, 684 P.2d 983 (1984); *Mitchell v. Agents of State,* 105 Idaho 419, 670 P.2d 520 (1983); *Mickelsen v. City of Rexburg,* 101 Idaho 305, 612 P.2d 542 (1980); *Saviers v. Richey,* 96 Idaho 413, 529 P.2d 1285 (1974). Existence of an adequate remedy in the ordinary course of law, either legal or equitable in nature, will prevent issuance of a writ, *Beem v. Davis,* 31 Idaho 730, 175 P. 959 (1918), and the party seeking the writ must prove that no such remedy exists. *Priest Lake Coalition, Inc. v. State ex rel. Evans,* 111 Idaho 354, 723 P.2d 898 (1986); *Rufener v. Shaud,* 98 Idaho 823, 573 P.2d 142 (1977); *District Bd. of Health of Pub. Health Dist. No. 5 v. Chancey,* 94 Idaho 944, 500 P.2d 845 (1972); I.C. § 7–302; § 7–303. This Court has repeatedly held that mandamus is not a writ of right and the allowance or refusal to issue a writ of mandate is discretionary. *Hunke v. Foote,* 84 Idaho 391, 373 P.2d 322 (1962); *Kerley v. Wetherell,* 61 Idaho 31, 96 P.2d 503 (1939); *Reynard v. City of Caldwell,* 53 Idaho 62, 21 P.2d 527 (1933); *Logan v. Carter,* 49 Idaho 393, 288 P. 424 (1930); *State v. Malcom,* 39 Idaho 185, 226 P. 1083 (1924); *State v. Banks,* 37 Idaho 27, 215 P. 468 (1923). Likewise, Idaho law requires that a writ must be issued in those cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. I.C. § 7–303.

A writ of mandamus is a command issuing from a court of competent jurisdiction, directed to an inferior court, tribunal, board, corporation or person, requiring the performance by the party of a particular duty which results from the official station of that party or from operation of law. I.C. § 7–302; *see also* 52 Am.Jur.2d *Mandamus,* § 1, p. 330 (1970).

In the past this Court has accepted original applications for a writ of mandamus to compel a party to perform some duty relating to public bonds. *Barker v. Wagner,* 96 Idaho 214, 526 P.2d 174 (1974) (writ of mandamus to compel the secretary of the board of directors of the American Falls Reservoir District to give notice of an election for the purpose of approving the construction of a dam and the issuance of bonds to finance this construction); *Hammond v. Bingham,* 83 Idaho 314, 362 P.2d 1078 (1961) (board of trustees for school district sought to compel the clerk of the board to countersign negotiable coupon bonds); *Davis v. Moon,* 77 Idaho 146, 289 P.2d 614 (1955) (bondholders sought to compel the treasurer of the state of Idaho to transmit to banks sufficient moneys to pay principal and interest of dormitory bonds in conformity with statute); *New First Nat. Bank v. City of Weiser,* 30 Idaho 15, 166 P. 213 (1916) (writ of mandamus to compel city authorities to pay funds arising from assessments made in improvement district in a certain way).

In several prior cases relating to original proceedings for a writ of mandate, this Court has been called upon to determine certain constitutional issues prior to deciding whether to issue the writ of mandamus. *Hammond v. Bingham,* 83 Idaho 314, 362 P.2d 1078 (1961) (school bond issue was not in violation of art. 3, § 16 of the Idaho Constitution); *Rich v. Williams,* 81 Idaho 311, 341 P.2d 432 (1959) (legislative appropriation of highway funds was not in violation of Idaho Const. art. 7, § 17); *Davis v. Moon,* 77 Idaho 146, 289 P.2d 614 (1955) (legislative appropriation of money to pay certain bonds did not constitute a "lending of credit" in violation Idaho Constitution art. 2, § 8). However, in the instant action it is not necessary for us to address and decide any potential constitutional issues

that may exist because the Agency has failed to prove the non-existence of an adequate remedy at law.

## II. *Reasons for Denial of Writ of Mandamus*

■ The Agency asserts that if we deny the requested writ, it will not have an adequate remedy at law. Accordingly, the Agency argues that this Court is required to issue the writ pursuant to I.C. § 7–303[2]. We disagree. Petitioner has failed to prove its burden that there does not exist a plain, speedy and adequate remedy at law. The Agency has provided us no evidence or proof of a crisis or urgent situation that would require this Court to issue the writ of mandamus.[3] Rather, the Agency has simply alleged in its verified petition that if the respondents do not sign the resolution and proceed to publish notice and execute the bonds, that the urban renewal project cannot be completed, Verified Petition, § 4, and that the will of the citizens will be thwarted. *Id.* at § 23. A careful review of the Appendix to Verified Petition and the other documents contained in the record demonstrate no proof to support the Agency's assertion that it has no other plain, speedy or adequate remedy. We agree that this is a matter of public importance, however the applicable legal standard requires the Agency to prove that no other adequate remedy exists. The Agency has failed to meet this standard in that it merely alleged potential failure of the project without presenting any evidence in support of this conclusion. The law requires more than conclusions and allegations to warrant the issuance of a writ of mandamus. The Agency has failed to prove that a writ of mandamus is its only adequate remedy under the circumstances.

2. 7–303. Absence of adequate remedy.—The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. It must be issued upon affidavit, on the application of the party beneficially interested.

3. In *Utah Power & Light Co. v. Campbell,* 108 Idaho 950, 703 P.2d 714 (1985) we agreed to expedite hearing on an application for a writ of

mandate due to existing time limitations on the construction of a pending hydroelectric project. In *Keenan v. Price,* 68 Idaho 423, 195 P.2d 662 (1948) this Court accepted jurisdiction of original mandamus proceedings where an urgency existed for immediate determination of important election issues due to brevity of time for filing plaintiff's declaration of candidacy.

The Agency's own bylaws contain provisions which enable the commissioners to appoint other individuals to perform the specified duties when the secretary or chairperson is unable or unwilling to perform such duties. In addition, there is no immediate concern of losing funding for the project. I.C. § 50–2020(b) provides in pertinent part:

> If a revenue allocation financing provision is adopted before January 1, 1989, such provision shall remain in full force and effect from the effective date of adoption of such provision until its termination pursuant to section 50–2028, Idaho Code.

The allocation of revenues and the power granted to an urban renewal agency will terminate if the agency has not borrowed the moneys, incurred indebtedness or issued bonds before December 31, 1995. I.C. § 50–2028. This express statutory provision allows a substantial period of time during which the agency may obtain the finances necessary for executing the urban renewal plan. Thus, the Agency has available to it other adequate remedies at law and sufficient time within which to pursue those remedies. All relief requested of this Court by the Agency can be accomplished at the district court level by a declaratory judgment action or in other proceedings. The issue of the potential "alter ego" status of the Agency in its relationship with the city of Idaho Falls, *see Boise Redevelopment Agency v. Yick Kong*, 94 Idaho 876, 499 P.2d 575 (1972), and the constitutional issues raised need not be addressed because the Agency has failed to prove the threshold criteria that no other adequate remedy exists. The petition for issuance of a writ of mandamus is denied.

Costs to respondents. No attorney fees on appeal.

BAKES, C.J., and McDEVITT, J., concur.

JOHNSON, Justice, specially concurring.

While I concur with the analysis of the lead opinion, it goes further than necessary. The analysis should begin and end with reference to the bylaws of the Agency.

This case is predicated on the refusal of the chairperson and the secretary of the Agency (1) to execute a resolution authorizing them to publish a notice of sale of the bonds and to execute the bonds, (2) to publish the notice of sale, and (3) to execute the bonds. The bylaws provide that the board of commissioners of the Agency may delegate to the executive director the duty of the chairperson to execute the bonds and other legal documents authorized by the board. The bylaws also provide that if the secretary of the agency refuses to execute the bonds or any other legal documents and instruments authorized by the board, the vice chairperson or another person designated by the board may perform these duties.

In my view, the board of commissioners of the Agency has full authority under these provisions to resolve the dilemma presented in the petition for writ of mandamus by simply delegating to the executive director and the vice chairperson the duties the chairperson and secretary refuse to perform.

With this in mind, this case looks remarkably like an attempt to obtain an advisory opinion from this Court.

BISTLINE, J. concurs.

BISTLINE, Justice, concurs with the opinion of JOHNSON, Justice, and concurs only in the result of the majority.

As Justice Johnson has written, "this case looks remarkably like an attempt to obtain an advisory opinion." In fact, this case is, like two other cases in recent memory, a very good attempt to obtain an advisory opinion. Art. 5 § 1 of the Idaho Constitution states that "[f]eigned issues are prohibited...." And, while Art. 5 § 10 does allow for "recommendatory" decisions to issue from the Court on certain claims against the state, no other provision is made or power conferred to the Court to issue an advisory opinion. No wonder; to write an opinion on a feigned issue is only

proper for "those who, with a feigned modesty, condemn as useless what they write." [4]

To all the better recognize the use of feigned issues to obtain an advisory opinion, one good example is *Canyon View Irrigation v. Twin Falls Canal*, 101 Idaho 604, 619 P.2d 122 (1980), in which the majority explained the issues before the Court:

> The case was tried upon stipulated facts. The parties also presented a stipulated statement of issues to the court below. Besides the two main issues regarding eminent domain and the interpretation of the 1903 contract, the parties asked the district court to settle some legal questions *in the event that* it found CV [Canyon View Irrigation Company] was entitled to condemn an interest in the canal system. First, *the parties wished to know* what effect the condemnation suit [if one was brought] would have on the various owners of land adjacent to TFCC's [Twin Falls Canal Company] canal system. Second, the parties requested that the court determine the proper measure of damages *in the event CV's plan was implemented* through condemnation proceedings.

*Canyon View Irrigation*, 101 Idaho at 607, 619 P.2d at 125 (emphasis added). The Court then went on to resolve these "issues."

My response to the Court's actions has in no way mellowed with time:

> That the appeal should be dismissed is self-evident. The district court should not have entertained the action in the first place. That neither of the parties raises the nonjusticiability of the controversy does not mean that the trial court was obligated to render what can only be considered a strictly advisory opinion. Every question put to the Court could and would necessarily be resolved in a condemnation action, had one been brought.... That the questions are important, and the answering thereof might

well serve to aid in bringing the parties together so that they can resolve their differences without going to court in a truly adversary proceeding, is insufficient to confer jurisdiction upon the courts.

*Canyon View Irrigation*, 101 Idaho at 615, 619 P.2d at 133 (Bistline, J. dissenting, joined by Dunlap, J., pro tem) (citations omitted).

In *Utah Power & Light Co. v. Campbell*, 108 Idaho 950, 703 P.2d 714 (1985), this Court considered a mandamus action *brought by the utility* against the mayor of Idaho Falls. I wrote that:

> The city council is the proper body to determine to enter into a contract, but the mayor is the official designated to sign the contract. As Mr. Storer [attorney for the city, representing the mayor] stated, the contract was negotiated by the city council. The city council is the party, and the only party, who could properly compel the mayor to perform the ministerial act of affixing his official signature as mayor of the City of Idaho Falls. The right in the city council to come into court and mandamus the mayor is peculiar to the city council. It is not an assignable right; nor has assignment of that right been attempted.
>
> One would think that a first year law student would have interposed the plea at bar that [the utility] simply had no right to hail the mayor into court. Because Mr. Storer is a capable attorney, it readily may be presumed that he was instructed to *not* raise that plea in bar. From that presumption, it is no great leap to wonder whether the Court has been presented with a feigned, non-justiciable controversy.

*Utah Power & Light Co.*, 108 Idaho at 958, 703 P.2d at 722 (Bistline, J. dissenting) (emphasis in original). Similarly, the mandamus action brought by the Idaho Falls Redevelopment Agency has all of the characteristics of presenting a feigned issue in order to obtain judicial approval of a very

---

4. The succinct brilliance of that phrase is the product of John Locke, English philosopher (1632–1704).

questionable arrangement of a municipality agreeing to construct a hydroelectric facility for and on behalf of an out-of-state private enterprise desirous of acquiring a new source of electrical power. Moreover, the requisite bond issuance could take place without resort to the mandamus action brought in this Court. A previous decision of this Court, *Idaho Falls Consolidated Hospitals v. Bingham County Board of Commissioners*, 102 Idaho 838, 642 P.2d 553 (1982) had held: "Art. VIII, § 4 of the Idaho Constitution specifically forbids counties and cities from loaning or giving credit for any purpose whatever." This Court favored Utah Power by holding that the arrangement was not a lending of credit.