# IN THE SUPREME COURT OF THE STATE OF IDAHO

## DOCKET NO. 47004

|  |  |
|---|---|
| ALIZA COVER, | ) |
| | ) |
|   Petitioner-Respondent-<br>  Cross Appellant, | ) ) |
| | ) |
| v. | )   **Boise, September 2020 Term** |
| | ) |
| IDAHO BOARD OF CORRECTION,<br>IDAHO DEPARTMENT OF<br>CORRECTION, and JEFFREY R. RAY,<br>Public Information Officer, | )   **Opinion Filed: November 20, 2020**<br>) <br>)   **Melanie Gagnepain, Clerk**<br>) |
| | ) |
|   Respondents-Appellants-<br>  Cross Respondents. | ) ) |
| _____ | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Lynn G. Norton, District Judge.

The district court's order is <u>reversed</u> and <u>remanded</u> for further proceedings consistent with this opinion.

Lawrence G. Wasden, Idaho Attorney General, for appellants. Jessica Kuehn argued.

American Civil Liberties Union of Idaho Foundation, Boise, for respondents. Richard Eppink argued.

_____

BRODY, Justice,

We decide in this case whether the Public Records Act authorizes the Idaho Department of Correction ("Department") to withhold certain records in response to a public records request. In 2017, Aliza Cover requested records relating to the use of the death penalty in Idaho. The Department provided some records in response, but withheld or redacted others, claiming these records were exempt from disclosure in whole or in part under Board of Correction Rule 135.06 ("Rule 135"). The Department argues Rule 135 was promulgated pursuant to a provision of the Public Records Act that allows the Board of Correction ("Board") to identify records as exempt from disclosure through rulemaking. Because there is no evidence that the Board promulgated Rule 135 as a public records exemption, we reverse the decision of the district court permitting

1

the Department to withhold records from Cover on this basis, and remand with instructions consistent with this decision.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In September 2017, Aliza Cover, a law professor at the University of Idaho College of Law who teaches and writes about the death penalty, sent a request to Jeffrey Ray, Public Information Officer at the Idaho Department of Correction, seeking public records about the death penalty in Idaho. Specifically, Cover requested records relating to: (1) "[t]he most current IDOC protocol for executions," (2) "[t]he drugs that have been or will be purchased/used in future executions (including identifying information about the drugs; drug labels; expiration dates; purchase orders/receipts; paperwork about how the drugs are to be stored; etc.)," and (3) "[t]he use of lethal injection in the Rhoades and Leavitt executions (including paperwork about where IDOC got its drugs from, and communications with drug suppliers or others regarding acquisition of drugs)." Paul Ezra Rhoades was executed by the Department in 2011. Richard Leavitt was executed in 2012.

Though the Department had prepared a "General Packet" containing more than 1,000 pages of documents to respond to public records requests regarding the death penalty, it did not send the General Packet to Cover. Instead, the initial response to Cover's request consisted of a web link to the most current version of the Department's execution protocol and 49 pages of additional documents.

In February 2018, believing the Department had withheld records she was entitled to receive, Cover filed a petition in district court under the Idaho Public Records Act and Idaho Rule of Civil Procedure 74 ("Rule 74") to compel the Department to release additional records responsive to her request. Per Cover's petition, the district court entered an alternative writ of mandamus pursuant to the Act and Rule 74, which ordered the Department to disclose additional responsive records or show cause why records should not be disclosed. At the same time, it set a briefing schedule and calendared a show cause hearing. On the day the Department's response to Cover's petition was due, the Department disclosed 603 additional pages of records.

At the show cause hearing in April 2018, the Department argued it was permitted to withhold or redact records requested by Cover under Rule 135. At the time of Cover's request, Rule 135 provided, in relevant part, that the Department would not disclose certain information related to executions:

> **Non-disclosure.** The Department will not disclose (under any circumstance) the identity of staff, contractors, consultants, or volunteers serving on escort or injection teams, nor will the Department disclose any other information wherein the disclosure of such information could jeopardize the Department's ability to carry out an execution.

IDAPA 06.01.01.135.06 (2017). In particular, the Department argued it was entitled to withhold records relating to the sources of execution drugs used in the Rhoades and Leavitt executions because disclosure of these records "could jeopardize" the ability of the Department to acquire execution drugs in the future. Cover argued that Rule 135 was invalid as a public records exemption, but even if it was valid, the Department could not establish that disclosure of records about acquiring drugs in the past would hamper the ability of the Department to carry out executions in the future.

The district court took the matter under advisement and—without any additional proceedings—issued a written order in May 2018. The district court ruled that Rule 135 was valid, but nevertheless found the Department was required to disclose records relating to the sources of execution drugs it had claimed were exempt under the Rule. In reaching this decision, the district court considered not only Rule 135, but section 74-105(4)(a)(i) of the Act, which authorizes the Board to exempt public records from disclosure through rulemaking. Under section 74-105(4)(a)(i), the Board is permitted to exempt records where the public interest in disclosure is clearly outweighed by public interest in "confidentiality, public safety, security[,] and rehabilitation[.]" While the district court found the relevant public interests favored an exemption to shield the names of individuals involved in carrying out executions, it found that the public interests did not favor withholding records related to the sources of execution drugs. Thus, the court entered a peremptory writ of mandamus compelling the Department to turn over records responsive to Cover's request, but allowing for the redaction of information identifying individuals involved in executions.

Though Cover maintained that Rule 135 was invalid throughout the litigation below, she did not oppose the withholding of information that identified individuals involved in carrying out executions. Cover has reiterated on appeal that she does not seek such information.

Following the show cause hearing, the Department filed a motion to reconsider issuance of the peremptory writ. The Department contended that the district court was prohibited from issuing the peremptory writ under Rule 74 without first holding a trial, and that it had offered

3

only "limited factual support" at the show cause hearing because it believed that a trial would follow if Cover's petition was not dismissed. In response, Cover argued the Department was playing a "cat and mouse game" to avoid compliance with its obligations under the first peremptory writ. Further, Cover argued that the writ was properly issued because the Public Records Act does not require a trial after a show cause hearing, and to the extent the Act and Rule 74 conflict, the statute should control.

The district court agreed with the Department. It ruled it had erred by granting the peremptory writ and that the Department was justified to have relied on Rule 74 as the controlling procedural rule. It also found the Act and Rule 74 were not inconsistent because the Act only set out "general requirements" for procedure, but offered little further analysis on this point. Thus, the district court granted the motion, withdrew the peremptory writ, set a trial date, and entered an amended alternative writ of mandate. The amended writ reiterated that the Department was required to disclose responsive records, but in addition to allowing for the redaction of names, it allowed redactions related to drug sources, pending trial.

In a halting series of disclosures between the granting of the Department's motion to reconsider and trial eight months later, the Department released nearly 2,000 more pages to Cover, many of them redacted. In notices accompanying roughly 1,300 pages, the Department explained the basis for these redactions by generally referencing multiple authorities, including Idaho Code sections 74-104 and 74-105, and Rules of the Board of Correction 108 and 135. For the redactions contained in an additional 600 pages, the Department cited no authority at all. After trial, and more than a year after Cover's request, the Department ran a keyword search of key employees' emails and hard drives—apparently for the first time—and turned up still more responsive records, which it then disclosed to Cover. The Department was in possession of all the disclosed documents at the time of Cover's initial public records request.

The trial was held over five days, beginning in January 2019, after which the district court entered the second peremptory writ of mandate appealed from here. In its findings of fact and conclusions of law accompanying the writ, the district court detailed which records and redacted information it found were exempt from disclosure, and those that must be disclosed. The district court found hundreds of pages of records were properly subject to withholding or redaction because they contained information exempt from disclosure under Board of Correction Rule 108 and Idaho Code section 74-104, such as prison operational plans, a social security

number, and inmates' pre-sentence investigation records. The court also found certain documents were exempt from disclosure under Rule 135, namely, a document referred to at trial as "Bates 655" and a Confidential Cash Log. Also relevant on appeal, the district court held the Department could withhold six pages of records relating to medical supplies other than lethal injection drugs because these records were beyond the scope of Cover's records request. The court required all other responsive records, including a document referred to at trial as "Bates 654," to be disclosed to Cover.

Bates 654 is a receipt from the compounding pharmacy that provided the drugs the Department used to execute Richard Leavitt in 2012. Bates 655 is a Drug Enforcement Administration form that identifies the pharmacy that provided drugs for the execution of Paul Ezra Rhoades in 2011. The Confidential Cash Log is a handwritten record of cash payments to individuals involved in the execution of Rhoades, as well as cash purchases of items related to training for and carrying out the execution. The Confidential Cash Log was not provided to Cover, but a summary of the Log was included among the records released by the Department and the district court reviewed the Log *in camera*. The six pages of records relating to medical supplies largely consist of lists of equipment with descriptions and quantities. However, the records also contain names and contact information for individuals. It is unclear if these individuals played any role in carrying out an execution.

The Department timely appealed from the district court's decision to require disclosure of Bates 654. Cover cross-appealed from the district court's decision to allow the Department to withhold Bates 655, the Confidential Cash Log, and the records relating to medical supplies. Cover also appeals the district court's grant of the Department's motion to reconsider the first peremptory writ, and seeks attorney fees on appeal. While the district court ordered Jeffery Ray to pay a $1,000 civil penalty under section 74-117 of the Public Records Act for withholding records in bad faith, and awarded more than $170,000 of costs and attorney fees against the Department under section 74-116 of the Act for frivolous denial of Cover's request, the Department has not appealed from these decisions.

## II.    STANDARD OF REVIEW

In a public records case, "a trial court's findings of fact will not be set aside unless clearly erroneous . . . . However, when the issue is one of law this Court exercises free review of the trial court's decision." *Bolger v. Lance*, 137 Idaho 792, 794, 53 P.3d 1211, 1213 (2002). This Court

5

reviews a lower court's decision to grant or deny a motion for reconsideration using the same standard of review the lower court used to decide the motion. *Int'l Real Estate Sols., Inc. v. Arave*, 157 Idaho 816, 819, 340 P.3d 465, 468 (2014).

## III.    ANALYSIS

### A. The district court erred by determining that Bates 655 and the Confidential Cash Log were exempt from disclosure under Rule 135.

The Idaho Public Records Act grants a general right to the public to examine and copy public records of the state. I.C. § 74-102(1). Under the Act, public records are presumed "open unless provided otherwise by statute." *Wade v. Taylor*, 156 Idaho 91, 97, 320 P.3d 1250, 1256 (2014). "This Court narrowly construes exemptions to the disclosure presumption." *Bolger v. Lance*, 137 Idaho 792, 796, 53 P.3d 1211, 1215 (2002). The agency withholding records "bears the burden of persuasion and must 'show cause,' or prove, that the documents fit within one of the narrowly-construed exemptions." *Id.*

Several exemptions in the Public Records Act apply specifically to records of the Department of Correction. At issue in this case is Idaho Code section 74-105(4)(a)(i), which exempts from disclosure "[r]ecords of which the public interest in confidentiality, public safety, security and habilitation clearly outweighs the public interest in disclosure as identified pursuant to the authority of the Idaho [B]oard of [C]orrection under section 20-212, Idaho Code." I.C. § 74-105(4)(a)(i). Idaho Code section 20-212, in turn, grants the Board of Correction authority to make such rules "not inconsistent with express statutes or the state constitution" that are necessary to carry out its duties as overseer of the state prison system.

Because the Department claimed all of the records at issue in this case were exempt under Board of Correction Rule 135, the central issue before us is whether Rule 135 created an exemption under Idaho Code section 74-105(4)(a)(i). At the time of Cover's public records request, Rule 135 included the following provision on non-disclosure surrounding executions: "The Department will not disclose (under any circumstance) the identity of staff, contractors, consultants, or volunteers serving on escort or injection teams, nor will the Department disclose any other information wherein the disclosure of such information could jeopardize the Department's ability to carry out an execution." IDAPA 06.01.01.135.06 (2017). As explained below, we hold Rule 135 did not create an exemption under the Public Records Act. First, however, we must address a fundamental error made by the district court in its review of the Department's claims of exemption.

6

1. The district court erred by weighing the public interest factors in Idaho code section 74-105(4)(a)(i).

Idaho Code section 74-105(4)(a)(i) assigns to the Board of Correction the responsibility to weigh the public interest in transparency against the competing public interest in "confidentiality, public safety, security and habilitation" when identifying records to be exempt from disclosure under the Public Records Act. Because the district court found no evidence in the record that the Board had weighed these interests when promulgating Rule 135, it weighed the interests itself to decide whether the Rule justified withholding individual records. The district court lacked authority to do so.

The district court appears to have weighed the relevant interests based on a misapplication of our decision in *Wade v. Taylor*, 156 Idaho 91, 320 P.3d 1250 (2014). In its findings of fact and conclusions of law, the district court wrote that *Wade* imposed an absolute mandate to evaluate claims of exemption independently from a withholding agency's determinations:

> *Wade v. Taylor* holds that whether or not a record is exempt from disclosure is an objective inquiry for the court. Therefore, this [c]ourt is not required, or even allowed, to give deference to the subjective determination of the records custodian. Whether a public record is subject to disclosure is an objective analysis, both for the custodian and for the district court.

Thus, the district court apparently determined it was permitted to weigh the interests itself to determine which records were exempt under section 74-105(4)(a)(i) because even if the Board had done so, it would be due no deference.

Correctly understood, *Wade* provides no support for the district court's direct weighing of interests. In *Wade*, the petitioner was injured when he was shot by a police officer. *Id.* at 94, 320 P.3d at 1253. The petitioner later sought investigatory records for use in tort and civil rights lawsuits, but the agency investigating the shooting claimed the records were exempt under the Public Records Act. *Id.* at 95-96, 320 P.3d at 1254-55. The district court found the records were not exempt and entered an order compelling the agency to disclose the records. *Id.* Thereafter, the agency moved to amend the order, which the district court granted. *Id.* Under the amended order, the agency was still required to disclose the records, but the petitioner was prohibited from using the records for any purpose other than to pursue his tort and civil rights claims. *Id.* This Court held the restriction on use was improper: "Whether or not a record is exempt from disclosure is an objective inquiry. Thus, as these are *public* records, the district court cannot limit

7

the disclosure of nonexempt records to certain individuals for certain purposes." *Id.* at 96, 320 P.3d at 1255 (emphasis in original). In other words, the objective inquiry under *Wade* directs courts and agencies to disregard the subjective purposes of requestors and apply the Act as written. It does not direct the district courts to make independent policy determinations where the Act, as written, places that authority with an agency.

Even more fundamentally, the district court erred because our courts "must give effect to all the words and provisions of [a] statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect." *Fell v. Fat Smitty's L.L.C.*, 167 Idaho 34, 38, 467 P.3d 398, 402 (2020). Once again, the statute exempts from disclosure "[r]ecords of which the public interest in confidentiality, public safety, security and habilitation clearly outweighs the public interest in disclosure as identified pursuant to the authority of the Idaho [B]oard of [C]orrection under section 20-212, Idaho Code." I.C. § 74-105(4)(a)(i). We perceive nothing ambiguous in the legislature's directive that the Board—not the judiciary—is entrusted to weigh the interests enumerated in Idaho Code section 74-105(4)(a)(i). By weighing the interests for itself, the district court effectively wrote the words "as identified [by] . . . the Idaho [B]oard of [C]orrection" out of Idaho Code section 74-105(4)(a)(i).

2. Rule 135 did not create an exemption under the Public Records Act.

Despite the district court's error, we are still able to determine whether the Department must release to Cover the records it withheld under Rule 135. Much of the parties' briefing focuses on the validity of Rule 135 as a rule of the Board of Correction. Cover argues that Rule 135 is invalid because it was not properly promulgated and because it is contrary to the Public Records Act. The Department argues that Rule 135 is valid because its promulgation was proper and the Board's authority to create exemptions under the Act is broad and is due deference by reviewing courts. But we need not address these arguments today because the validity of Rule 135 is only relevant to Cover's case if Rule 135 was, in fact, created as an exemption pursuant to section 74-105(4)(a)(i) of the Act. We hold it was not.

To reach our decision, we do not need to look further than the Public Records Act and the Rules of the Board of Correction themselves. Idaho Code section 74-105 provides:

> (4)(a)  The following records of the [D]epartment of [C]orrection [are exempt from disclosure:]

8

(i)     Records of which the public interest in confidentiality, public safety, security and habilitation clearly outweighs the public interest in disclosure as identified pursuant to the authority of the Idaho [B]oard of [C]orrection under [its rulemaking authority]

Board of Correction Rule 108—which is titled "Idaho Public Records Act"—provided at the time of Cover's public records request:

01.     **Intent of the Board.** It is the intent of the Board that the records of the Department shall be open to the public for inspection and copying at all reasonable times, unless the records or information contained therein is specifically exempted from disclosure . . . .

. . .

04.     **Records Exempt from Disclosure.** In order to protect information consistent with the public's interest in confidentiality, public safety, security, and the habilitation of offenders, the Board has identified records of the Department to be exempt from disclosure in whole or in part. These records include, but are not limited to:

[numerous categories of records, including facility blueprints, offender medical records, and information that could lead to the identification of confidential informants, etc., but not including records relating to executions]

IDAPA 06.01.01.108 (2017). By contrast, Rule 135 is titled "Executions," and at the time of Cover's request provided:

01.     **Personnel Assigned to Execution.** Idaho Maximum Security Institution (IMSI) personnel and the Department's administrative team will carry out the execution warrant. . . .

02.     **Method of Execution.** Execution of the sentence of death shall be by lethal injection.

03.     **News Media Coordination.** Department personnel will coordinate news media activity . . . .

04.     **Public Information Officer to Handle News Media Requests.** The director . . . will designate a public information officer to deal with execution-related news media requests and releases of information.

05.     **Parking and Demonstration Areas Provided.** Areas for public and news media parking will be provided and maintained in a secure manner. . . .

06.     **Non-Disclosure.** *The Department will not disclose (under any circumstance) the identity of the on-site physician; or staff . . . ; nor will the Department disclose any other information wherein the disclosure of*

9

*such information could jeopardize the Department's ability to carry out an execution.*

07.     **Persons Allowed in the Execution Unit.** The director . . . shall have the discretion to determine the number of persons allowed in the execution unit at any time. . . .

IDAPA 06.01.01.135 (2017).

Comparing these provisions, we see no connection between the Public Records Act and Rule 135. In contrast to Rule 108, which expressly references the Public Records Act, Rule 135 makes no reference to the Act at all. And unlike Rule 108, Rule 135 makes no reference to the public interests listed in section 74-105(4)(a)(i) of the Act, but focuses on the interests of the Department in carrying out executions. Finally, the non-disclosure provision of Rule 135 is listed after three subsections relating to the news media and seems intended as guidance to Department personnel when speaking to the public about executions, rather than as a directive having anything to do with the release of public records.

Indeed, in reply to Cover's argument that Rule 135 lacks any connection to the Public Records Act, the Department offers a response that amounts to no response at all. The Department asserts that Rule 135 "was specifically adopted pursuant to the authority conferred on the [the Board] in Idaho Code § 74-105(4)(a)(i)." However, it points to no evidence to support its contention. To the contrary, the Department stipulated before trial that the Board "made no explicit determination" about the balance of public interests under section 74-105(4)(a)(i) before it promulgated Rule 135. Further, the Department stipulated that no minutes of the meetings of the Board of Correction reflect discussion of the Public Records Act in connection with the promulgation of Rule 135, and the notice of promulgation for Rule 135 does not cite the Public Records Act as authority.

The Department appears to argue that no evidence is necessary to support its contention because Idaho Code section 74-105(4)(a)(i) imposes no requirement that the Board document its deliberations when creating an exemption, in meeting minutes or otherwise. We agree that section 74-105(4)(a)(i) of the Public Records Act is silent on the matter of recording the Board's deliberations. But this argument does not help the Department's cause. Whether the Board was required to record how it balanced the relevant public interests is a matter wholly apart from whether it actually balanced the public interests. That no statute required the Board to create supporting evidence does not obligate us to accept the Department's argument without support.

10

At bottom, the Department's argument is an invitation to infer from the existence of Rule 135 and its subject matter that the Rule was created as an exemption pursuant to the Public Records Act. To draw such an inference would require us to act inconsistently with our requirement to narrowly construe public records exemptions. *Bolger*, 137 Idaho at 796, 53 P.3d at 1215. The Department's burden was to prove the records it withheld fit within a narrowly-construed exemption to the Act, yet nothing beyond the Department's unsupported assertion demonstrates that Rule 135 was promulgated as an exemption to the Public Records Act. Thus, the district court erred by determining that Bates 655 and the Confidential Cash Log are exempt from disclosure. These records must be released to Cover without redaction, except to the extent they contain personally-identifying information that Cover does not seek.

**B.      The district court erred by allowing the Department to withhold records relating to medical supplies.**

Six pages of records relating to medical supplies used in executions were provided to Cover in heavily redacted form. The district court held the Department was entitled to redact these records because Cover did not request information about medical supplies. Cover argues this is an unreasonable construction of her request. We agree.

Cover's request stated that she sought records about the "use of lethal injection in the Rhoades and Leavitt executions (including paperwork about where IDOC got its drugs from, and communications with drug suppliers or others regarding acquisition of drugs)." Because there could have been no "use of lethal injection" in these executions without medical equipment for injecting, information relating to medical supplies is logically within the scope of Cover's request. While the Department argues that the parenthetical that begins with the word "including" is a qualification that limits the request to information about acquiring drugs, this argument is not well taken. "The word 'include' is not a limiting or restrictive term." *Rohnert v. Amalgamated Sugar Co.*, 95 Idaho 763, 766, 519 P.2d 432, 435 (1974).

Because the records relating to medical supplies were within the scope of Cover's request, and because we find no basis in the Public Records Act for claiming such records are exempt, the district court erred by allowing the Department to withhold these records. However, on review of the unredacted records, it appears they might also contain personally-identifying information Cover does not seek. Thus, we remand for the district court to determine if any of this information is not subject to disclosure on that basis.

11

**C.    The Department did not waive untimely claims of exemption or exemptions claimed without a proper notice of denial.**

Although we have held that all records withheld pursuant to Rule 135 must be disclosed to Cover, Cover argues we must go much further. Cover argues that the Department failed to comply with time and notice requirements in the Public Records Act, and therefore waived its ability to claim exemptions. Thus, even records that the district court found were withheld under valid exemptions must be disclosed. We disagree.

The Public Records Act requires an agency to respond to a public records request within three working days of receiving the request. I.C. § 74-103(1). If an agency determines it will need more time to locate or retrieve responsive records, it may, upon written notice to the requestor, extend the time to fulfill the request to ten days from its receipt. *Id.* If an agency responding to a request withholds or redacts responsive records, it must give written notice of the denial and the notice must indicate the statutory authority for the denial. I.C. § 74-103(4). Finally, if the agency fails to respond, the request is deemed denied. I.C. § 74-103(2)-(3). Here, only the initial 49-page release of records occurred within the ten-day period, and Rule 135 was the only basis for withholding indicated in the accompanying notice of denial. Only in notices accompanying subsequent releases did the Department indicate any other basis for redaction.

Cover asserts that "the Public Records Act was built to get records into the hands of the public fast," and, therefore, exemptions claimed after the ten-day period must be deemed waived. Otherwise, Cover argues, "the requirement to timely specify all claimed exemptions would be meaningless" and agencies would be incentivized to withhold records in bad faith. In effect, Cover argues that we must impose a strict waiver rule on untimely claimed exemptions as a sanction to enforce compliance with the Act. Notably, an agency's obligation to disclose responsive records is not cut off after the ten-day period under Cover's proposed rule—only its ability to claim exemptions. Because Rule 135 did not create a public records exemption, and this was the only exemption claimed within the ten-day window, Cover argues the Department must re-release every one of the thousands of pages disclosed to her without any redactions. We disagree.

First, Cover is incorrect that the Public Records Act's deadline for compliance is meaningless without her waiver rule. While the Act does not contain a separate remedy for the failure to timely respond, such a failure is deemed a denial, and the Act provides remedies for bad faith and frivolous denials. *See* I.C. § 74-116 (authorizing the award of costs and attorney

fees against the withholding agency); I.C. § 74-117 (authorizing the imposition of civil penalty against a public official who deliberately and in bad faith refuses a legitimate request for records). Thus, untimely responses may result in an award of these remedies. Indeed, that is what happened in this case. And far from toothless, the district court's award of these remedies has already cost the Department in excess of $170,000.

Nevertheless, Cover argues that without a harsher remedy an agency acting in bad faith might roll the dice and refuse to comply until a requestor sues. Cover is correct that the Act requires that agencies respond promptly to requests for records, but the Act also balances transparency with the protection of sensitive information. *See, e.g.*, I.C. § 74-105(2) (protecting records of juvenile offenders); I.C. § 74-107(1) (trade secrets); I.C. § 74-106(4)(g) (social security numbers); I.C. § 74-106(13) (medical records).

In this case, if we were to apply Cover's proposed rule, we would obligate the Department to cast into public view hundreds of pages of records the district court found were properly exempt from disclosure. These records include operational plans for correctional facilities, an individual's social security number, and inmates' presentence investigation reports. Though public release of this information could compromise the security of Department facilities and would seriously invade the privacy of individuals, nothing in the Public Records Act suggests the objective of quick compliance was intended to eclipse the objective to protect sensitive information. Thus, to adopt Cover's waiver rule would require us to do more than fashion a remedy to advance the purposes of the Act, as Cover suggests. Rather, we would shape legislative policy itself by favoring one of the Act's objectives over another. This is not our role. "The power to make law and declare public policy is vested with the legislature." *Elec. Wholesale Supply Co. v. Nielson*, 136 Idaho 814, 825, 41 P.3d 242, 253 (2001). Because the power to create the remedy Cover seeks lies with the legislature, we do not adopt her proposed waiver rule.

Finally, Cover argues that a waiver rule should also apply to punish deficient notices of denial. Primarily, Cover complains that notices of denial she received were inadequate because they covered hundreds of pages each, cited to multiple bases for exemption, did not indicate which exemption was claimed for each individual record, and for one disclosure, cited no basis for exemption at all. We note that the Public Records Act offers no guidance on how specifically an agency must indicate a basis for a denial, but that what comprises adequate notice is likely to

13

vary with the scope of each request, the nature of the records requested, and the exemptions claimed in each case. We acknowledge that nonspecific claims of exemption covering hundreds of pages of records vitiated the usefulness of the notices to Cover, and certainly a notice that cites no authority does not comply with the Act. However, the Act provides no separate remedy for non-complying notices. It only provides remedies for bad faith and frivolous denials, of which non-complying notices may be evidence. For the reasons stated above regarding untimely claims of exemption, we do not adopt a waiver rule as a sanction for deficient notices of denial.

**D.** **Idaho Rule of Civil Procedure 74 does not govern Public Records Act cases, but application of the rule in this case was invited error.**

Cover argues we must reverse the district court's grant of the Department's motion for reconsideration and reinstate the first peremptory writ of mandamus for two reasons: (1) because allowing the second writ to stand would reward the Department's "bad faith gambit" to avoid compliance with the Public Records Act until learning how the district court would rule, and (2) because the district court erred by determining that the Department was entitled to a trial under Idaho Rule of Civil Procedure 74 before a peremptory writ could issue.

We dispose of Cover's first argument quickly. The point of a motion for reconsideration is to reconsider the correctness of an order. *Int'l Real Estate Sols., Inc. v. Arave*, 157 Idaho 816, 819, 340 P.3d 465, 468 (2014). Yet, Cover's first argument does not address the correctness of the first peremptory writ at all; she merely asserts we should punish the Department's handling of her request by reinstating the first peremptory writ. This is little more than a repackaging of Cover's waiver rule for untimely claims of exemption—the effect of reinstating the first peremptory writ would be to disallow claims of exemption made after the show cause hearing, even if the district court later found those exemptions were validly claimed at trial. For the same reasons we rejected Cover's waiver rule, we will not reverse the grant of the motion for reconsideration as a sanction for the Department's conduct.

Turning to Cover's second argument, we begin with a discussion comparing writs of mandamus with orders to release records under the Public Records Act. A writ of mandamus is an order "issued by the [S]upreme [C]ourt or any district court to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office . . . ." I.C. § 7-302. "The writ of manda[mus] is an extraordinary remedy requiring extraordinary circumstances." *Rogers v. Gooding Pub. Joint Sch. Dist. No. 231*, 135 Idaho 480, 482, 20 P.3d 16, 18 (2001), *overruled on other grounds by City of*

14

*Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012). Accordingly, the writ is unavailable where an adequate alternative remedy exists. *Idaho Falls Redevelopment Agency v. Countryman*, 118 Idaho 43, 44, 794 P.2d 632, 633 (1990).

The writ may take one of two forms: alternative or peremptory. I.R.C.P. 74(a); I.C. § 7-303. A peremptory writ is a final judgment that requires a party to perform an act sought by a petition, whereas an alternative writ compels a party to perform an act or to appear at a show cause hearing to explain why the act should not be compelled. *See* I.A.R. 11(a)(1); I.R.C.P. 74(a). Procedures for obtaining these writs are set forth in Idaho Rule of Civil Procedure 74 ("Rule 74"). Of importance here, Rule 74 provides that a peremptory writ may not be issued after a contested show cause hearing. I.R.C.P. 74(b)(3)(C). Rather, if a show cause hearing is contested, the court must schedule a trial on the merits, and may only "hear limited testimony as to whether the alternative writ should remain in force pending trial on the merits." I.R.C.P. 74(b)(3)(D).

The enforcement provisions of the Public Records Act similarly envision show cause hearings and orders directing public officials to comply with their duties. I.C. § 74-116. However, the Act does not mention alternative or peremptory writs of mandamus, and instead of requiring a trial after a contested show cause hearing, it provides that an order compelling disclosure of records must issue directly after the hearing:

> (1) Whenever it appears that certain public records are being improperly withheld from a member of the public, the court shall order the public official charged with withholding the records to disclose the public record or show cause why he should not do so. *The court shall decide the case after examining the pleadings filed by the parties and such oral arguments and additional evidence as the court may allow. . . .*
>
> (2) If the court finds that the public official's decision to refuse disclosure is not justified, it shall order the public official to make the requested disclosure. . . .

I.C. § 74-116 (emphasis added).

Despite this inconsistency, Cover's petition sought relief pursuant to both Rule 74 and the Public Records Act; the parties stipulated to a show cause hearing under both Rule 74 and the Act; and the district court entered orders styled as writs of mandamus per Rule 74, but under the authority of the Act. It was only after the Department claimed in its motion for reconsideration that it was entitled to a trial on the merits that Cover objected to proceeding under Rule 74, arguing that the Act controlled to the extent of any conflict between the rule and the Act.

15

We agree with Cover that the district court erred when it proceeded to adjudicate this case under Rule 74. Section 74-116 of the Public Records Act indicates that a court "shall" decide the case after a show cause hearing, and it was error to provide the Department with another bite at the apple. However, we will not reinstate the first peremptory writ. "On appeal, it is not sufficient simply to show error. A party alleging error must also show that the error affected the party's substantial rights." *Reed v. Reed*, 160 Idaho 772, 775, 379 P.3d 1042, 1045 (2016). The only non-exempt records withheld from Cover as a result of granting the motion to reconsider and holding trial are Bates 655, the Confidential Cash Log, and the six pages of records relating to medical supplies. Because we reverse the district court's decision holding these records exempt from disclosure, and because these are the only records Cover had a right to receive which were withheld as a result of trial, there is no remaining error to justify reversal of the motion for reconsideration. Furthermore, Cover stipulated to proceedings under both Rule 74 and the Public Records Act. Thus, she invited the error and cannot complain of it now. *Thomson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009) ("The doctrine of invited error applies to estop a party from asserting an error when his own conduct induces the commission of the error.").

Finally, Cover's counsel explained at oral argument that the reason Cover cited to Rule 74 was because this Court stated more than thirty years ago that "mandamus is the proper remedy" in a public records case. *See Dalton v. Idaho Dairy Prod. Comm'n*, 107 Idaho 6, 9, 684 P.2d 983, 986 (1984). Because Cover's error derives from our statement in *Dalton*, it is important to discuss the relationship between *Dalton*, mandamus, Rule 74, and the Public Records Act. When *Dalton* was decided in 1984, Idaho Code section 9-301 (repealed in 1990) provided a right for the public to examine and copy public records. *See Dalton*, 107 Idaho at 8–9, 684 P.2d at 985–86. But critically, no statutory means of enforcement existed because none was provided by section 9-301 and the Idaho Public Records Act had not yet been enacted. *See* Idaho Public Records Act, 1990 Idaho Sess. Laws 480. Thus, a party denied the right to view records was without an adequate alternative remedy unless mandamus was available. *Countryman*, 118 Idaho at 44, 794 P.2d at 633.

However, since 1990 the Public Records Act has provided a remedy. Section 74-115 of the Act now provides that "the sole remedy for a person aggrieved by the denial of a request for disclosure is to institute proceedings in the district court of the county where the records or some

16

part thereof are located, to compel the public agency . . . to make the information available for public inspection in accordance with the provisions of this chapter." I.C. § 74-115(1). We earlier observed that provisions of the Public Records Act evince a legislative policy to promptly provide the public with public records. Critical among these, the Act provides that "the time for responsive pleadings and for hearings . . . shall be set by the court at the earliest possible time, or in no event beyond twenty-eight (28) calendar days from the date of filing." *Id.* Consistent with this tight timeline—and in stark contrast to the proceedings in this case—the Act does not provide for a trial following a show cause hearing. Rather it allows the district court to determine what argument and evidence it requires to determine the merits of the petition, and directs that the court "shall decide the case" after such a hearing. We hold that the proper procedure in a public records case is simply to follow the procedure provided by the Public Records Act—Rule 74 does not apply.

### E. Cover is entitled to attorney fees on appeal.

Cover seeks attorney fees under section 74-116(2) of the Public Records Act and costs under Idaho Appellate Rule 40. Section 74-116(2) provides that the court "shall award reasonable costs and attorney fees to the prevailing party or parties, if it finds that the request or refusal to provide records was frivolously pursued." The district court found that the Department frivolously withheld records, and therefore Cover argues she is entitled to fees on appeal. The Department offers no argument in reply.

We note that our Court of Appeals has taken the view that the relevant inquiry for an award of fees on appeal in a public records case is whether the *appeal* was frivolous, not whether the *refusal to disclose records* was frivolous. *See Hymas*, 156 Idaho at 748, 330 P.3d at 1106 ("Although the [petitioners] prevailed on appeal, the [agency] did not frivolously defend this appeal, as the issue was at least reasonably debatable. Accordingly, neither the [agency] nor the [petitioners] are entitled to attorney fees on appeal."). We do not find the Department's appeal to be frivolous. However, the Public Records Act does not speak of the frivolousness of appeal, only of the refusal to provide records. To the extent the Court of Appeals' decision in *Hymas* suggests the frivolousness of an appeal is the determinative question for an award of fees on appeal, that decision is mistaken.

This, however, requires us to address another issue: the Public Records Act does not speak to fees on appeal at all. Nevertheless, we interpret the Act to provide for fees on appeal

17

where an agency has frivolously denied a records request, an appeal is taken, and the petitioner is the prevailing party on appeal. This interpretation of section 74-116(2) is consistent with our interpretation of other statutory provisions for the award of attorney fees that do not specifically address the award of fees on appeal. *See Cedillo v. Farmers Ins. Co. of Idaho*, 158 Idaho 154, 166–67, 345 P.3d 213, 225–26 (2015) (awarding fees on appeal pursuant to I.C. § 41-1839, regarding claims arising from insurance policies); *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 142, 357 P.3d 863, 867 (2015) (same pursuant to I.C. § 12-120(3), regarding suits arising from commercial transactions); *Duspiva v. Fillmore*, 154 Idaho 27, 37, 293 P.3d 651, 661 (2013) (same pursuant to I.C. § 48-608(5), regarding consumer protection actions).

Because the district court determined the Department's refusal was frivolous, and Cover is the prevailing party on appeal, we award attorney fees to Cover. Further, Cover is entitled to costs under Idaho Appellate Rule 40.

## IV.  CONCLUSION

The district court's decision to allow the Department to withhold Bates 655, the Confidential Cash Log, and the records relating to medical supplies is reversed. We remand with instructions that the district court (1) determine whether any of these records contain personally-identifying information and (2) order the Department to release the records to Cover without redaction, except for any personally-identifying information. Costs and attorney fees are awarded to Cover on appeal.

Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.